# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## No. 24-2039

---

Danette Hester,
Appellant,

vs.

United States Department of the Treasury, Secretary Janet L. Yellen,
Appellee.

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

---

## APPELLANT'S BRIEF

---

Christopher Stewart
Boles Witosky Stewart Law PLLC
2015 Grand Avenue, Ste. 200
Des Moines, Iowa 50312
(515) 235-0551
(515) 243-3696 (Fax)
chris@bwsiowa.com
**ATTORNEY FOR APPELLANT**

1

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

After almost two (2) decades of service to the United States in the Internal Revenue Service, Danette Hester, a fifty-three (53) year old, African-American female, applied for a Criminal Investigator position. The IRS posted two (2) vacancies for this position, and Ms. Hester, with international training and experience as an instructor, was selected for the top two candidate spots, being called "highly qualified" for the job. Despite her qualifications, however, Ms. Hester was not hired for either of the positions. Instead, she was informed the IRS intended to hire a younger, non-African America male, whom Ms. Hester outmatched in qualifications.

Ms. Hester filed a discrimination complaint, and the IRS proposed termination. Ms. Hester filed claims of sex, race, and age discrimination, and retaliation against the Appellee. The District Court granted summary judgment for the Appellee, from which Ms. Hester appeals as there exists genuine issues of material facts regarding the IRS's actions during the interview process and her termination.

Appellant requests to be heard in oral argument for 10 minutes.

## TABLE OF CONTENTS

**Summary and Request for Oral Argument**........................................2

**Table of Contents**.................................................................3

**Table of Authorities**............................................................5

**Jurisdictional Statement** ......................................................9

**Statement of Issues**............................................................9

**Statement of Case** .............................................................10

   **I.   Procedural Background** ..............................................10

   **II.   Factual Background**................................................11

**Summary of Arguments**...........................................................16

**Arguments** .....................................................................17

   **I.  Standard of Review** .................................................17

   **II.   A Reasonable Factfinder Could Reject the IRS's Reasons for Not Hiring Ms. Hester Despite Her Qualifications**..............18

      **A.**  UNDISPUTED ELEMENTS OF SEX AND RACE DISCRIMINATION .....19

      **B.**  DISPUTE OVER THE CANDIDATES AND VACANCIES......................20

      **C.**  PRETEXTUAL CHANGE IN VACANCIES .........................................28

Appellate Case: 24-2039   Page: 3   Date Filed: 08/07/2024 Entry ID: 5422118

**III.  The Underlying Circumstances Can Raise an Inference That the IRS Intended to Discriminate on the Basis of Age ....30**

    **A.**   UNDISPUTED ELEMENTS OF AGE DISCRIMINATION ....................31

    **B.**   ADAPTING THE "SUBSTANTIALLY YOUNGER" ELEMENT...............32

    **C.**   IDENTICAL PRETEXT BETWEEN AGE AND RACE/SEX DISCRIMINATION ....................................................................37

**IV.  The Material Facts of the IRS's Retaliation Are Genuinely Disputed.................................................................38**

    **A.**   PRIMA FACIE CASE OF RETALIATION ..........................................38

    **B.**   ALLEGED MISCONDUCT AND A LACK OF FACTUAL BASIS............42

**Conclusion................................................................................46**

**Certificate of Service and Filing .......................................48**

**Certificate of Compliance .................................................49**

4

# TABLE OF AUTHORITIES

## Cases

*Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497 (11th Cir. 1991)...........34

*Banks v. Deere*, 829 F.3d 661 (8th Cir. 2016) ...................... 18, 28, 30, 42

*Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893 (N.D. Iowa
2009) ...................................................................... 37, 43, 45

*Bonenberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103 (8th
Cir. 2016). ..................................................................... 19

*Brown v. Farmland Foods, Inc.*, 178 F.Supp.2d 961
(N.D. Iowa 2001)................................................................45

*Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837 (5th Cir. 2010)....38

*Butler v. MFA Life Ins. Co.*, 591 F.2d 448 (8th Cir. 1979). ...................17

*Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989).............. 33, 35, 36

*Chism v. Curtner*, 619 F.3d 979 (8th Cir. 2010) .....................................20

*Davison v. City of Minneapolis, Minn*, 490 F.3d 648 (8th Cir. 2007).....18

*Early v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990).............34

*Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071
(2005) ...................................................................... 41, 43, 44

Appellate Case: 24-2039    Page: 5    Date Filed: 08/07/2024 Entry ID: 5422118

*Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d
733 (Iowa 2003) ............................................................................ 19, 20

*Faulkner v. Douglas County Nebraska*, 906 F.3d 728 (8th Cir. 2018) ... 20

*Flores v. United States*, 689 F.3d 894 (8th Cir. 2012). ..................... 17, 19

*Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932 (8th
Cir. 1999) ........................................................................................ 24

*Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538 (8th Cir. 1991). ........ 24

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012) ........ passim

*Gibson v. Geithner*, 776 F.3d 536 (8th Cir. 2015) .................................. 27

*Godfrey v. State*, 962 N.W.2d 84 (Iowa 2021) ....................................... 38

*Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th
Cir. 1985) .............................................................................. 33, 35, 36

*Grant v. City of Blytheville, Arkansas*, 841 F.3d 767 (8th
Cir. 2016) ................................................................................. passim

*Greene v. Safeway Stores, Inc.*, 98 F.3d 554 (10th Cir. 1996) ................ 32

*Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031 (8th Cir. 2005) ........ 38, 46

*Heisler v. Nationwide Mutual Ins. Co.*, 931 F.3d 786 (8th Cir. 2019) .... 23

*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858 (8th Cir. 2006) ......................... 44

*Ingels v. Thiokol Corp.*, 42 F.3d 616 (10th Cir. 1994) ............................ 34

6

*Kim v. Nash Finch Co.*, 123 F.3d 1046 (8th Cir. 1997) .......................... 39

*Korbin v. University of Minnesota*, 34 F.3d 698 (8th

   Cir. 1994) ................................................................. 26, 27, 43

*Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010) .............. 24, 27

*McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th

   Cir. 1980) ................................................................................ 34

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............... passim

*Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th

   Cir. 2007) ........................................................................... 30, 36

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024) ............................... 40

*Phillips v. Collings*, 256 F.3d 843 (8th Cir. 2001) ........................... 38, 39

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ...... 29

*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005) ......... 22, 27, 32

*Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106 (8th

   Cir. 2001) ................................................................................ 41

*St. Mary's Honor Centre v. Hicks*, 509 U.S. 502 (1993) ......................... 41

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ............... 27

*Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007) ................................... 23

*Tolan v. Cotton*, 572 U.S. 650 (2014) .................................................... 29

Appellate Case: 24-2039   Page: 7   Date Filed: 08/07/2024 Entry ID: 5422118

*Tolen v. Ashcroft*, 377 F.3d 879 (8th Cir. 2004). ......................................20

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ... 28, 42, 43

*Yearns v. Koss Construction Company*, 964 F.3d 671 (8th Cir. 2020) ...38

*Young v. Builders Steel Co.*, 754 F.3d 573 (8th Cir. 2014) .....................22

## Statutes

28 U.S.C. § 1291 ......................................................................................9

29 U.S.C. § 623 .......................................................................................9

42 U.S.C. § 2000e .....................................................................................9

Fed. R. Civ. P. 56(a)................................................................................17

Appellate Case: 24-2039     Page: 8     Date Filed: 08/07/2024 Entry ID: 5422118

## JURISDICTIONAL STATEMENT

The Order and Judgment granting summary judgment were entered on May 2, 2024, by the Honorable Judge Rose in the U.S. District Court for the Southern District of Iowa. (App. 278–88; R.Doc. 48, at 1–10, R.Doc. 49, at 1; Add. 1–11). Jurisdiction was pursuant to 42 U.S.C. § 2000e et seq. and 29 U.S.C. § 623 et seq. The Order and Judgment disposed of all claims. *Id*. Timely notice of appeal was filed on May 8, 2024. (App. 295; R.Doc. 50, at 1). Jurisdiction of the Eighth Circuit is under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

**I.** A REASONABLE FACTFINDER COULD REJECT THE IRS'S REASONS FOR NOT HIRING MS. HESTER DESPITE HER QUALIFICATIONS

*Korbin v. University of Minnesota*, 34 F.3d 698 (8th Cir. 1994)
*Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010)
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)
*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005)

**II.** THE UNDERLYING CIRCUMSTANCES CAN RAISE AN INFERENCE THAT THE IRS INTENDED TO DISCRIMINATE ON THE BASIS OF AGE

*Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989)
*Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir. 1985)
*Grant v. City of Blytheville, Arkansas*, 841 F.3d 767 (8th Cir. 2016)
*Greene v. Safeway Stores, Inc.*, 98 F.3d 554 (10th Cir. 1996)

Appellate Case: 24-2039     Page: 9     Date Filed: 08/07/2024 Entry ID: 5422118

**III. THE MATERIAL FACTS OF THE IRS'S RETALIATION ARE GENUINELY DISPUTED**

*Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893 (N.D. Iowa 2009)
*Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071 (2005)
*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024)
*Phillips v. Collings*, 256 F.3d 843 (8th Cir. 2001)

**STATEMENT OF CASE**

## I. Procedural Background

This case originated with an individual complaint of employment discrimination with the Department of the Treasury, filed July 9, 2021. (App. 63–65; R.Doc. 35-4, at 52–54). Danette Hester received a final agency decision for this complaint on January 19, 2022, and filed her original Complaint in the United States District Court for the Southern District of Iowa on April 12, 2022. (App. 204–10, 161; R.Doc 46-4, at 46, 1, at 1). This complaint asserted claims of race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and age discrimination in violation of the Age Discrimination Employment Act. (App. 163–65; R.Doc 1, at 3–5). On June 14, 2022, Ms. Hester filed an individual complaint of retaliation with the Department of the Treasury. (App. 217–21; R.Doc. 46-4, at 59). She received a final agency decision on

10

December 29, 2022, and requested leave to amend her Complaint. (App. 229–33; R.Doc. 46-4, at 71). On February 27, 2023, less than ninety (90) days after the final agency decision on the retaliation claim, Ms. Hester filed an Amended Complaint which included two (2) retaliation claims in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination Employment Act. (App. 33–42; R.Doc. 18, at 1–10).

The appellee sought summary judgment on all claims, which Ms. Hester resisted. (App. 1–3, 146–48; R.Doc. 35, at 1, 46, at 1). The court granted appellee's motion on May 2, 2024. (App. 287; R.Doc. 48, at 10; Add. 10). Subsequently, the court entered judgment in favor of the Appellee that same day. (App. 288; R.Doc. 49, at 1; Add. 11). Ms. Hester timely appealed. (App. 289; R.Doc. 50, at 1). Ms. Hester challenges the grant of summary judgment on all counts.

## II. Factual Background

In January of 2006, Danette Hester (hereinafter "Ms. Hester") began working for the Internal Revenue Service (hereinafter "IRS") section of the Department of Treasury (hereinafter "the Appellee") as a Special Agent. (App. 80; R.Doc. 35-4, at 69). Using years of accounting and law enforcement training, she has dedicated almost two (2) decades

11

of service to the United States by investigating and prosecuting financially-related crimes. *Id*. Ms. Hester's work with the IRS included international experience as part of a training team in El Salvador, Ghana, and Thailand, where she "was able to increase the financial investigative knowledge of [their] law enforcement  partners in developing countries." (App. 82; R.Doc. 35-4, at 71). During her time with the IRS, Ms. Hester was also able to work as an instructor and developed educational materials for incoming Special Agents; in fact, in a rare occurrence for the department, *all* of the students that Ms. Hester taught graduated from their classes and moved onto field work. (App. 83; R.Doc. 35-4, at 72).

In December of 2020, the IRS posted a job announcement for a Criminal Investigator and Senior Resident Course Developer/Instructor ("RDCI"). (App. 43; R.Doc. 35-4, at 32). This position, based in Glynco, Georgia, involved senior level instruction, course development, and technical expertise in the specialized field of criminal tax evasion. (App. 44; R.Doc. 35-4, at 33). The position listed two vacancies. (App. 43; R.Doc. 35-4, at 32). Because of her expertise and experience in teaching, Ms. Hester decided to apply for the job. (App. 80–88; R.Doc. 35-4, at 69–77).

12

Ms. Hester was then selected as one of the best qualified candidates; on March 9, 2021, she interviewed with a panel that included National Training Academy Director Chris Altemus (hereinafter "Mr. Altemus"), Assistant Director Melissa McFadden (hereinafter "Ms. McFadden"), and Supervisory Academy Instructor Nicholas Rice (hereinafter "Mr. Rice"). (App. 35-¶16, 267-¶16; R.Doc. 18, at 3-¶16, 20, at 7-¶16). Ms. Hester was told that her interview went well and that she was highly qualified for the position. (App. 6-¶13, ; R.Doc. 35-2, at 3-¶13). Four (4) candidates interviewed for the position, and two (2) of those candidates—including Ms. Hester—were selected to fill the vacancies. (App. 61; R.Doc. 35-4, at 50).

On March 10, 2021, Mr. Altemus forwarded the panel's selections to Acting Deputy Director Kristina O'Connell (hereinafter "Ms. O'Connell"), recommending that the position be offered to Ms. Hester and another candidate, Winston De Feria (hereinafter "Mr. De Feria"). (App. 61; R.Doc. 35-4, at 50). However, upon receiving these selections, Ms. O'Connell informed the panel that they were limiting the department to one selection due to "upcoming" restructuring. *Id*. None of the panel members had been made aware of any impending reorganization or the

possibility that they may only choose one candidate, nor were any of the candidates informed of these facts. (App. 6; R.Doc. 35-2, at 3-¶14). Ms. Hester was informed by the panel that although she was selected to fill one of the two vacancies, she would not be hired for the position. *Id*. Ms. Hester and Mr. De Feria went through the same application process and interview questions; both brought international experience, with Ms. Hester having an additional two (2) years of experience in comparison to Mr. De Feria. (App. 206, 80–88, 66–69; R.Doc. 46-4, at 61, 35-4, at 69–77, 55–57). Their most notable distinction raises the present issue before this Court, however: Ms. Hester is a fifty-three (53) year old, African-American female, while De Feria—who was ultimately hired for the position—is younger, non-African-American, and male. (App. 278, 283; R.Doc. 48, at 1, 6).

Ms. Hester filed a discrimination complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC"), asserting that she had not been selected for this position in spite of her qualifications because of her race, age, and sex. (App. 63–65; R.Doc. 35-4, at 52–54). The EEOC filed a final agency decision on January 20, 2022. (App. 204–10; R.Doc. 46-4, at 46–52). Approximately one (1) month after

this decision was issued, the IRS sent Ms. Hester a letter proposing that she be removed from service. (App. 98; R.Doc. 35-4, at 87). The IRS alleged misconduct contradictory to service and misuse of a government vehicle as the basis for termination. *Id*. Ms. Hester proceeded to file her Petition in the District Court for the Southern District of Iowa on April 12, 2022. (App. 161; R.Doc. 1, at 1). In this Petition, she asserted claims of discrimination on the basis of sex, age, and race. (App. 164–66; R.Doc. 1, at 5–7).

In response to her termination proposal, Ms. Hester also filed another complaint with the EEOC for retaliation as the IRS had proposed her termination shortly after she had made her discrimination complaint. (App. 217–21; R.Doc. 46-4, at 59–63). Ms. Hester was later removed from service on June 24, 2022, again for the same allegations provided in her termination proposal. (App. 104; R.Doc. at 35-4, at 93). Notably, Ms. Hester's termination proposal acknowledged how severe the removal would be for her first offense, providing no chance for any rehabilitation or consideration of other forms of discipline. (App. 99, 101; R.Doc. 35-4, at 88, 90). Ms. Hester appealed her termination to the Merit Systems Protection Board ("MSPB") on July 26, 2022, and her

termination was reduced to a 30-day suspension on one of the allegations of misconduct, with the other allegation receiving no discipline. (App. 111–13; R.Doc. 35-4, at 100–02). In its reasoning, the MSPB found that there was insufficient evidence to support one of the misconduct claims, and that there was no proof that "removal was a reasonable penalty based on the charge [they] sustained." (App. 111, 113; R.Doc. 35-4, at 100, 102). On April 28, 2023, Ms. Hester amended her Petition to include claims of retaliation related to the sex, race, and age discrimination complaints, subsequent to the EEOC's final decision on December 29, 2022. (App. 33, 38–39; R.Doc. 18, 6–7).

## SUMMARY OF ARGUMENTS

I. Under the *McDonnell Douglas* minimal evidentiary standard, the questionable qualifications and failure to mention reorganization raise a sufficient factual dispute to deny summary judgment on the race and sex discrimination claims.

II. While substantial age difference is a common age discrimination standard, the qualities of the position in question, along with the flexibility of *McDonnell Douglas*, raises a genuine question of fact for a jury on age discrimination.

16

**III.** Suspicious timing, when supplemented by the disproportionate discipline proposed, raises an inference of retaliation from Ms. Hester's discrimination complaints.

### ARGUMENTS

## I. Standard of Review

Summary judgment is appropriate only when there exists no genuine issue of material fact. Fed. R. Civ. P. 56(a). A genuine dispute of material fact is one where "the evidence is such that it could cause a reasonable jury to return a verdict for either party[,]" with materiality resting on whether "resolution [of the fact] affects the outcome of the case." *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012). Summary judgment is for rare instances where the "moving party has established his right to judgment with such clarity as to leave no room for controversy. . . ." *Butler v. MFA Life Ins. Co.*, 591 F.2d 448, 451 (8th Cir. 1979). A district court's grant of summary judgment is reviewed *de novo*, "viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Flores*, 689 F.3d at 902.

17

## II.	A Reasonable Factfinder Could Reject the IRS's Reasons for Not Hiring Ms. Hester Despite Her Qualifications

The *McDonnell Douglas* test, as was applied in this case, only requires a "'*minimal evidentiary showing*' to establish a prima facie case of discrimination." *Davison v. City of Minneapolis, Minn*, 490 F.3d 648, 662–63 (8th Cir. 2007) (Colloton, J. concurring) (emphasis added). To establish this prima facie case of discrimination, Ms. Hester must show (1) that she belonged to a protected class, (2) that she applied and was qualified for a position seeking applicants, (3) that she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Once she has passed that threshold, the burden shifts to the defendant to provide a "legitimate nondiscriminatory reason" for the "adverse employment action." *McDonnell Douglas*, 411 U.S. at 802. If that burden is met, it then shifts back to Ms. Hester to show that this justification is merely a pretext for discrimination. *Banks*, 829 F.3d at 666. For each of her claims, Ms. Hester either undisputedly satisfies her burden on each

18

element, or has raised enough evidence to present a question of fact to a reasonable factfinder.

**A.** UNDISPUTED ELEMENTS OF SEX AND RACE DISCRIMINATION

In terms of the first three elements of *McDonnell Douglas*, a reasonable factfinder could find in favor of Ms. Hester, especially when the evidence is viewed most favorable to her. *See Flores*, 689 F.3d at 902. Ms. Hester, an African-American woman, without question belongs to a protected class. (App. 283; R.Doc. 48, at 6). She applied for the RDCI position in January of 2021 and submitted all of the required documents. (App. 89–97; R.Doc. 35-4, at 78–86). Not only did she meet the base requirements to apply, but the panel of interviewers also described her as "highly qualified" for the position. (App. 6-¶13, ; R.Doc. 35-2, at 3-¶13).

An adverse employment action occurs when such action results in a change in "pay, rank, or material working conditions." *Bonenberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103, 1107 (8th Cir. 2016). Material changes in working conditions may include changes in supervisory duties, schedule and hours, prestige, and opportunity for promotion. *Id.* at 1108; *see also Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 742 (Iowa 2003) ("Materially adverse

action. . .includes subtle conduct as such as depriving an employee of the opportunity to advance. . . .”). Ms. Hester was more than qualified for the RDCI position, yet was denied this promotion in March of 2021, “depriving [her] of the opportunity to advance. . . .” *Farmland Foods Inc.*, 672 N.W.2d at 742. Thus, the facts on the record show that Ms. Hester has established the first three elements of a prima facie discrimination claim.

**B.** DISPUTE OVER THE CANDIDATES AND VACANCIES

Ms. Hester must raise an inference of discrimination by showing that “she was treated differently than similarly situated persons who are not members of the protected class.” *Faulkner v. Douglas County Nebraska*, 906 F.3d 728, 732 (8th Cir. 2018). The similarly-situated test “requests that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself.” *Chism v. Curtner*, 619 F.3d 979, 984 (8th Cir. 2010). For example, in discriminatory discipline cases, similarly situated employees were those with the same supervisor, same standard of performance, and performing the same conduct without any mitigating factors. *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004). Before she may show how the candidate

selected was treated more favorably, Ms. Hester must show that she was so similarly situated with this candidate with the exception of their status in a protected class. The nature of this claim lends itself to that proof with ease.

Both Ms. Hester and the other candidate were applying for the same position as an RDCI, which called for the same base qualifications before applying. (App. 44–49; R.Doc. 35-4, at 33–38). Further, both individuals, along with the other two candidates, went through the same interview process, which included the same questions and panel of interviewers. (App. 206; R.Doc. 46-4, at 61). In the end, both Ms. Hester and the hired individual were selected to fill the vacancies above the other two (2) candidates. (App. 61; R.Doc. 35-4, at 50). All these similarities relate back to the position that Ms. Hester was ultimately denied. What set her apart, ultimately, from her competitors was her gender and the color of her skin, both of which put her in a protected class: again, Ms. Hester is an African-American female, while the individual hired was a non-African American male.

A look into the interview process also shows that Ms. Hester and the other candidate remained competitive with each other, both

Appellate Case: 24-2039    Page: 21    Date Filed: 08/07/2024 Entry ID: 5422118

possessing skills, such as international experience, that the interviewers had identified as priorities on their radar. (App. 206, 82; R.Doc. 35-4, at 72). These comparisons satisfy the similarly-situated standard that Ms. Hester first must pass, especially when considering the lower threshold Eighth Circuit courts have taken in the past when performing a prima facie analysis. *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) ("At the prima facie stage of [*McDonnell Douglas*], we choose to follow the low-threshold standard for determining whether employees are similarly situated. We believe this more accurately reflects Supreme Court precedent.").

After a showing that Ms. Hester and the other candidates were similarly situated, she may demonstrate more favorable treatment through means such as a decisionmaker's comments, or pretext for discrimination such as through deviation from policy or shifting explanations for decisions. *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 775–76 (8th Cir. 2016); *see also Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014) ("[P]retext can also satisfy the inference-of-discrimination element of the prima-facie case.").

Hiring of a less-qualified employee can suffice to show pretext for discrimination. *Heisler v. Nationwide Mutual Ins. Co.*, 931 F.3d 786, 796 (8th Cir. 2019). Comparing Ms. Hester's qualifications with the selected candidate reveals specific evidence, rather than "mere allegations" or speculation, that Ms. Hester was more qualified. *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). Ms. Hester had an two additional years of experience in comparison to the Mr. De Feria and had been with the IRS for longer. (App. 66, 80; R.Doc. 35-4, at 55, 69). Additionally, Ms. Hester was described as "highly qualified" for the position. (App. 6-¶13, ; R.Doc. 35-2, at 3-¶13). Ms. Hester and Mr. De Feria were both selected by the panel with two vacancies in mind; neither of those vacancies implied any hierarchy that would suggest that the other candidate surpassed Ms. Hester in terms of qualifications. (App. 43; R.Doc. 35-4, at 32).

Ms. Hester also stands in contrast with candidates in other discrimination cases where a prima facie case was not established. Precedent shows that previous petitioner-employees were denied their desired positions for obvious instances of misconduct or deficiencies in other areas like a lack of leadership skills or examples of harassment. *See Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932, 937 (8th

23

Cir. 1999); *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir. 1991). The panel in Ms. Hester's case cited no misconduct that made her less qualified than the other candidate, and she possessed international experience, in combination with her two decades of work history, which was a priority to the interviewers. (App. 206; R.Doc. 46-4, at 61). Notably, Ms. Hester is not required to *disprove* the IRS's reasons for selecting the other candidate to establish her prima facie case. *See, e.g.*, *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) ("Lake establishes his prima facie case if, setting aside Yellow's reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified.") (original emphasis).

Ms. Hester also presents evidence of a shifting explanation for the change in number of vacancies, which can also demonstrate a pretext for discrimination. When the job opening was originally posted in December of 2020, the posting listed two vacancies for the RDCI, one of which Ms. Hester was ultimately selected for. (App. 43; R.Doc. 35-4, at 32). On March 10, 2021, the interview panel emailed their choices to Deputy Director Kristina O'Connell (hereinafter "Ms. O'Connell") to fill those vacancies. (App. 61; R.Doc. 35-4, at 50). It was not until after the panel

Appellate Case: 24-2039    Page: 24    Date Filed: 08/07/2024 Entry ID: 5422118

sent this email with their choices—when it was made known that they had chosen Ms. Hester—that Ms. O'Connell responded that they could only select one candidate. *Id*. Ms. O'Connell states that this was due to a realignment in the office, which she insists was already in motion after the job had been posted but before the candidates were selected. (App. 206; R.Doc. 46-4, at 61). However, during one of the internal investigations, Ms. O'Connell states that the decision to re-organize the headquarters' structure was announced in December 2020—the same month that the position was posted. *Id*. In granting summary judgment, the District Court summarized this as merely "suspicious timing." (App. 284; R.Doc. 48, at 7; Add. 7). However, it is the department's actions—or lack thereof in some instances—that raises the evidence from coincidence to pretext. None of the panel members claim that they were made aware that only one of the vacancies could be filled prior to submitting their selections; instead, they asserted that "interviews had been conducted with the intent to hire two new RDCIs." (App. 6-¶14; R.Doc. 35-2, at 3-¶14). Further, Ms. O'Connell states she limited the panel to one applicant not out of any strict order, but based on the advice of the HR Director

25

that it was "*permissible* to fill less than the posted number of vacancies. . . ." (App. 206; R.Doc. 46-4, at 61).

The District Court stated this does not amount to a shifting explanation as Ms. Hester "does not identify any other reason given by the Department for the decision not to hire her, other than the reorganization." (App. 284; R.Doc. 48, at 7; Add. 7). This represents a narrow interpretation of the shifting explanation proof. For example, in *Korbin v. University of Minnesota*, the court found that the defendant's hiring needs had "changed significantly over time" when they offered contradictory core requirements for their professors; shortly, after hiring another candidate, the university informed the plaintiff that they hired someone working in psychoanalysis, yet later stated that the plaintiff was "too focused on psychoanalysis" to be hired. 34 F.3d 698, 703 (8th Cir. 1994).

Here, the department posted two (2) vacancies with no evidence of changing this number throughout the application and interview process. It was not until the interviewers had made their selection that the IRS offered their "reorganization" explanation to justify reducing the number of vacancies. (App. 61; R.Doc. 35-4, at 50). The Appellee's changing

26

position satisfies a showing a pretext for the last element of the *McDonnell Douglas* analysis. From this timeline, a reasonable jury could "reject the defendant's proffered reasons" for hiring the other candidate over Ms. Hester. *Korbin*, 34 F.3d at 703.

All of the elements of *McDonnell Douglas* should be analyzed while keeping in mind that "[u]sing a more rigorous standard at the prima facie stage would conflate the prima facie case with the ultimate issue of discrimination[,]. . . eliminating the burden-shifting framework" set by the Supreme Court. *Rodgers*, 417 F.3d at 852; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."). This "minimal" threshold of proof is what courts use to prevent the *McDonell Douglas* test from collapsing in its initial stages. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015); *Lake*, 596 F.3d at 874. To prevent this collapse, plaintiffs are not required to disprove the employer's reasons in the initial stages, but merely must raise a triable issue of material fact beyond "mere speculation, conjecture, or fantasy." *Lake*, 596 F.3d at 874; *Grant*, 841 F.3d at 770 (citation omitted). Applying this "flexible evidentiary standard," Ms. Hester has presented facts that

27

a jury could find establishes a prima facie case; at minimum, she has raised genuine disputes as to (1) her qualifications in comparison to other candidates and (2) the IRS's reasons for changing the vacancies. *See Grant*, 841 F.3d at 774 (citation omitted).

## C. PRETEXTUAL CHANGE IN VACANCIES

With a prima facie case demonstrated, the burden then falls on the defendant to provide a nondiscriminatory reason for denying Ms. Hester the RDCI position. If a reason is provided, Ms. Hester must then show that this is merely a pretext for discrimination. *Banks*, 829 F.3d at 666. A "material question of fact regarding pretext" may be demonstrated by showing that either the employer's explanation has "no basis in fact" or that a "prohibited reason more likely motivated the employer." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011).

In response to Ms. Hester's discrimination claim, the IRS claims their decision to only hire one candidate instead of two stemmed from recent re-structuring in the department. (App. 61; R.Doc. 35-4, at 50). This reason lacks a factual basis, raising a reasonable jury question of the real motivation behind the IRS's hiring decision. *See Torgerson*, 643 F.3d at 1047. The IRS only provided one email describing the re-

organization as "upcoming." (App. 61; R.Doc. 35-4, at 50). Additionally, the decision to re-structure was announced the same month as when the position was posted; yet, neither interviewers nor the candidates were informed that there would only be one vacancy. (App. 206; R.Doc. 46-4, at 61). At the very least, this raises the question of why the panel was not informed of the re-organization and instead was allowed to go through an application and interview process with four (4) candidates for two (2) vacancies. (App. 207; R.Doc. 46-4, at 62).

During the summary judgment phase, the Court does not assume the role of juror to weigh credibility or the evidence; their task is to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The Court "must also disregard all evidence favorable to the moving party that the jury is not required to believe[,]" only giving credence to "uncontradicted and unimpeached" evidence from "disinterested witnesses." *Reeves*, 530 U.S. at 151. Sufficient evidence that a factfinder may disbelieve  defendant's nondiscriminatory reason, along with a prima facie case of discrimination, may allow for the "trier of fact to infer the ultimate fact of discrimination from the falsity of the

29

employer's explanation." *Id.* at 146–47. As the IRS's primary evidence of their nondiscriminatory reasoning can be discredited, and the timeline of the vacancy change raises an inference of discrimination, there exists a genuine issue of material fact. *See Banks*, 829 F.3d at 666 ("To survive summary judgment, Banks had to discredit both Deere's articulated reason for discipline and demonstrate the circumstances permit a reasonable inference of discriminatory animus." (quotation marks and citation omitted)). Thus, the court erred in granting summary judgment on Count I of Ms. Hester's Complaint.

## III. The Underlying Circumstances Can Raise an Inference That the IRS Intended to Discriminate on the Basis of Age

Like race and sex discrimination, age discrimination claims without direct evidence follow the *McDonnell Douglas* framework, requiring that the plaintiff show that they (1) were at least forty (40) years old, (2) suffered and adverse employment action, (3) "w[ere] meeting [the] employer's legitimate expectations at the time of the adverse employment action," and (4) were replaced by someone "substantially younger." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (quoting *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039

30

(8th Cir. 2007)). Similarly, under this framework, once a prima facie case is established, the burden shifts to the employer to show a "legitimate, nondiscriminatory reason," which the plaintiff must then rebut with a showing of pretext. *Id.* (citation omitted).

**A.** UNDISPUTED ELEMENTS OF AGE DISCRIMINATION

The first three elements of Ms. Hester's prima facie case of age discrimination are established without question. Ms. Hester is a fifty-three (53) year old woman, falling into the class protected by age discrimination statutes. (App. 35-¶11, 266-¶11; R.Doc. 18, at 3, 20, at 6). The second element, as argued in Section II.A, is established by the fact that Ms. Hester was selected but not hired for the RDCI position, adversely affecting her employment opportunities.

There is also no evidence that Ms. Hester was not meeting the legitimate expectations of her employer when she was denied the RDCI position. Ms. Hester had almost two (2) decades of experience and was "highly qualified" for the RDCI position she applied for. (App. 6-¶13, 66, 80; R.Doc. 35-2, at 3-¶13, 35-4, at 55, 69). The comments of her interviewers establish that she met the expectations for this position and her current job. (App. 209; R.Doc. 46-4, at 64). Given these facts, the first

31

three elements of Ms. Hester's age discrimination claim are established in her favor.

**B.** ADAPTING THE "SUBSTANTIALLY YOUNGER" ELEMENT

The District Court granted summary judgment on the age discrimination claim primarily based on the fourth element, stating there was no argument made that a four-year age difference was "substantial." The "substantially younger" test is the common standard required for the fourth *McDonnell Douglas* element of an age discrimination claim. *Am. Greeting Corp.*, 670 F.3d at 856. However, a prima facie case under *McDonnell Douglas* has a "flexible evidentiary standard" in order to protect the burden-shifting framework developed by the Supreme Court. *Grant*, 841 F.3d at 774; *Rodgers*, 417 F.3d at 852. Other courts have interpreted this flexibility, especially in relation to the fourth element, and held that "in an extraordinary case, a plaintiff may be relieved from satisfying the four elements of the *McDonnell Douglas* test for establishing a *prima facie* case of employment discrimination." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 559–60 (10th Cir. 1996). Instead of strictly requiring that the plaintiff be replaced by a substantially younger

32

employee, courts have modified the test to fit particular situations and allow for the fourth factor to be "analytically applied." *Id*. at 560.

Not only does this prevent collapse at the initial stages of a plaintiff's discrimination claim, but it also takes into consideration "repeated eschewal of an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases." *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989). As the court in *Carter v. City of Miami* noted:

> Age, unlike race or sex, "is not a discreet and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones."

870 F.2d at 583 (quoting *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1442 (11th Cir. 1985)). These subtle distinctions between differently-aged employees call for the flexibility that *McDonnell Douglas* allows, especially as age can be more closely tied or even disguised by employee traits like experience or maturity. As the court in *Carter* goes on to point out:

> "Seldom will a sixty-year-old be replaced by a person in the twenties...[B]ecause the discrimination involves age, rather than sex or race, a requirement that the replacement be from

Appellate Case: 24-2039     Page: 33     Date Filed: 08/07/2024 Entry ID: 5422118

> a nonprotected group fails to take the reality of the working place into account." Thus, we have declined to show hold that a plaintiff's inability to show that he was replaced by someone under forty *is an absolute bar to the establishment of a prima facie case.*

870 F.2d at 583 (quoting *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980) (emphasis added)). With the realities of the workplace in mind, many courts have modified the required proof of the last element, instead requiring that the plaintiff produce either circumstantial or direct evidence "from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994); *see also Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991); *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).

In Ms. Hester's case, requiring proof that age was a "but-for" reason for the adverse employment action presents a particular challenge to her prima facie case; along with her age discrimination claim, Ms. Hester was denied the position on the basis of her race and sex, making it impossible to show that age was the sole factor in the decision. *See Am. Greeting Corp.*, 670 F.3d at 856. In order to show that age was the "but-for" cause

34

of not being hired, Ms. Hester would be required to sacrifice her other claims based on her race and sex, despite her status in those protected classes and the fact that her competitor was *not* a part of those classes.

The nature of Ms. Hester's job and the position she applied for also makes it unlikely that she would be replaced by someone "substantially younger" in the traditional sense under *McDonnell Douglas*. *Am. Greeting Corp.*, 670 F.3d at 856. The RDCI position was for a "senior level instructional specialist, course developer, and authoritative technical expert," and the interviewers sought out individuals with teaching and international experience. (App. 44; R.Doc. 35-4, at 33). It is unlikely with that description an individual in their twenties or even thirties would have the necessary prerequisites to even apply for position, let alone be interviewed or hired by the panel. *See Carter*, 870 F.2d at 583. As the court in *Goldstein v. Manhattan Indus., Inc.*, noted, "it is likely that. . . the employer would select someone who has a more appropriate balance of age and experience, and that only someone who is over 40 years old is likely to have had the sort of experience to enable [the employer] to fill the position. . . ." 758 F.2d at 1444. While the hired candidate was still in the protected age class like Ms. Hester, the reality of this position calls

35

for a modified standard of proof, which Ms. Hester has met by showing that a younger employee was chosen. *See Carter*, 870 F.2d at 578.

Courts, including those in Eighth Circuit, have also looked to other evidence to supplement this fourth element, including even when the plaintiff's replacement is older. *Morgan*, 486 F.3d at 1044–45. This additional evidence has included biased statements, systematic replacement of other protected employees, and exceeding qualifications from the plaintiff. *See id*; *Goldstein*, 758 F.2d at 1443–44 ("Moreover, the evidence is overwhelming that Goldstein was highly qualified for his position."). As argued in Part II.B, Ms. Hester was "highly qualified" for the RDCI position with no glaring misconduct that set her apart from the other candidate. She, like the other candidate, possessed international experience and had previous teaching opportunities, and surpassed the other candidate in terms of years of experience. (App. 80–88; R.Doc. 35-4, at 69—77). Considering these qualifications and the nature of RDCI position, when combined the fact that the other candidate was younger than Ms. Hester, a reasonable inference of age discrimination could be raised. A prima facie case of age discrimination is thus established.

**C.** IDENTICAL PRETEXT BETWEEN AGE AND RACE/SEX DISCRIMINATION

As with Ms. Hester's race and sex discrimination claims, the IRS asserts that they did not hire Ms. Hester because of re-organization in the department, resulting in a change in the number of vacancies for the RDCI position. Ms. Hester offers the same evidence of pretext as with her other claims. The IRS has only provided one email of the "upcoming" re-organization. (App. 61; R.Doc. 35-4, at 50). None of the interviewers or candidates were informed that a vacancy may be cut, despite the fact that the re-structuring and the position opening were announced in the same month. (App. 43, 206; R.Doc. 35-4, at 32, 46-4, at 61). Again, this raises the question of why the IRS would allow four candidates to go through the application and interview process for two vacancies. This question is best left for a jury who can determine whether the factual background supports or undermines the IRS's alternative reason. *See Beekman*, 635 F.Supp.2d at 922. For these reasons, summary judgment on Count II was inappropriate and should be reversed.

Appellate Case: 24-2039    Page: 37    Date Filed: 08/07/2024 Entry ID: 5422118

## IV. The Material Facts of the IRS's Retaliation Are Genuinely Disputed

### A. PRIMA FACIE CASE OF RETALIATION

Ms. Hester's prima facie case for retaliatory discharge requires that she show (1) participated in a statutorily protected activity, (2) her employer took an adverse employment action against her, and (3) there was a causal connection between the actions. *Yearns v. Koss Construction Company*, 964 F.3d 671, 674 (8th Cir. 2020); *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034–35 (8th Cir. 2005).

A protected activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Godfrey v. State*, 962 N.W.2d 84, 107 (Iowa 2021) (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)). Ms. Hester's discrimination complaint, filed July 9, 2021, provides that notice of her reasonable belief, demonstrating that she engaged in a protected activity. (App. 63; R.Doc. 35-4, at 52).

As for the second element, "actions short of termination. . . may still constitute adverse employment actions." *Phillips v. Collings*, 256 F.3d 843, 848 (8th Cir. 2001). Seven (7) months after she filed her complaint,

the IRS sent a letter proposing that she be removed from service or otherwise disciplined. (App. 98; R.Doc. 35-4, at 87). An adverse employment action involves "tangible change in duties or working conditions that constitute a *material disadvantage*." *Phillips*, 256 F.3d at 848. (citation omitted). Past examples have included conduct outside of termination, such as disciplinary action, negative reports, extremely critical evaluations, or other actions that "undermine [the] employee's position." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997); *Phillips*, 256 F.3d at 848.

The District court could not find an adverse employment action in their decision, arguing that because there were no changes in Ms. Hester's working conditions and no final determination that she be fired, she failed to meet this element. (App. 286; R.Doc. 48, at 9; Add. 9). While Ms. Hester was not terminated until June of 2022, the language used in her termination proposal and the severe consequences implicated, constitute an adverse effect on her working conditions, similar to if she had been fired immediately. *See Phillips*, 256 F.3d at 848.

In the initial proposal for termination, Director Gabriel  Grchan expresses "grave concerns about [Ms. Hester's] judgment" and a lack of

"confidence in [her] ability to perform [her] duties as a Special Agent. . . ." (App. 98; R.Doc. 35-4, at 87). Mr. Grchan further expressed a belief that Ms. Hester's conduct warranted a more severe penalty, suggesting removal despite the fact that she had no prior offenses. (App. 99; R.Doc. 35-4, at 88). Mr. Grchan also emphasize that there was no potential for rehabilitation after these offenses, citing removal as the "only reasonable sanction." (App. 101; R.Doc. 35-4, at 90). It is clear from this letter than the view of Ms. Hester and her role in the department have shifted negatively. In comparison to this language, the use of the term "proposal" seems but a mere formality to provide notice for the impending adverse action Ms. Hester faces. Further, following this notice, Ms. Hester was expected to prepare a response and defend her actions pending termination, creating a material disadvantage to her working conditions. That reply was the only step standing between this proposal and actual termination, which, as appears from the initial letter, seems like an inevitable next step. (App. 103; R.Doc. 35-4, at 92).

As the District Court notes from *Muldrow v. City of St. Louis*, the retaliation standard "was meant to capture those. . .employer actions serious enough to dissuade a reasonable worker from making or

supporting a charge of discrimination." 144 S. Ct. 967, 976 (2024)
(internal quotation marks omitted). A reasonable individual could find
such language in this severe form dissuasive enough to prevent further
complaints of discrimination. This proposal and the impending
termination therefore constitute an adverse employment action for the
second element.

Lastly, a reasonable factfinder could trace a causal connection
between Ms. Hester's discrimination complaint and the adverse proposal
of termination. Again, Ms. Hester's prima facie case only requires a
"minimal showing before shifting the burden to the employer." *Sprenger
v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir.
2001) (citing *St. Mary's Honor Centre v. Hicks*, 509 U.S. 502, 506 (1993)).
Here, temporal proximity between Ms. Hester's complaint and the
proposal letter can satisfy the minimal evidentiary standard of the third
*McDonnell Douglas* test. *See Sprenger*, 253 F.3d at 1114; *see also Eliserio
v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1079 (8th Cir.
2005) (finding a causal connection between an employee complaint and
supervisor's request for removal *months apart*). Ms. Hester filed her
discrimination complaint on July 9, 2021. (App. 63; R.Doc. 35-4, at 52).

41

Seven (7) months later, the IRS's proposal letter all but finalized Ms. Hester's termination. (App. 98; R.Doc. 35-4, at 87). During these months, the discrimination complaint would have been investigated, requiring the IRS's resources and time in defense.

While the District Court points to Ms. Hester's alleged misconduct to undermine this connection, there is a factual dispute as to basis for these allegations, specifically raising a question as to the severity and proportionality of the IRS's reaction. From this proximity and the parties' ongoing involvement, a reasonable factfinder could infer that the IRS's proposed termination letter was motivated by Ms. Hester's discrimination complaint and the subsequent investigation. *See Torgerson*, 643 F.3d at 1047. Thus, Ms. Hester has established a prima facie case for retaliation.

### B. ALLEGED MISCONDUCT AND A LACK OF FACTUAL BASIS

Once Ms. Hester has established a prima facie case of retaliation, the burden shifts to the defendant under *McDonnell Douglas* to articulate a legitimate, non-retaliatory reason. 411 U.S. at 802. Once an alternative reason has been established, Ms. Hester again has the burden to show that this explanation is pretextual. *Banks*, 829 F.3d at 666. Like with the

42

discrimination case, pretext may be demonstrated either through a lack of factual basis or by showing that a prohibited reason more likely motivated the IRS's decision to terminate. *See Torgerson*, 643 F.3d at 1047. The IRS claims a string of alleged misconduct by Ms. Hester as motivation for her termination. (App. 98; R.Doc. 35-4, at 87). Specifically, the IRS claims that Ms. Hester acted contrary to her position as an agent and misused a government vehicle. *Id.* However, Ms. Hester presents substantial evidence of suspicious timing and disproportionate discipline that could lead a reasonable factfinder to reject the IRS's alternative explanation for the termination. *See Korbin*, 34 F.3d at 703.

Among the factors supporting a showing of pretext is timing, which may "weigh[] in favor of finding causation," especially in conjunction with other evidence. *Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893, 922 (N.D. Iowa 2009). Other factors include whether the employee was informed of the alleged misconduct that the employer offered for their termination and whether such termination represented a severe step in discipline. *Eliserio*, 398 F.3d at 1079. The employee-petitioner in *Eliserio v. United Steelworkers of America Local 310*, for example, was removed from his area upon the defendant's request based on alleged misuse of

the company radio. 398 F.3d at 1079. However, despite the defendant making multiple complaints about this behavior, Eliserio was never disciplined or even told of his misconduct. *Id.* The court noted that the defendant could not explain why they "had considered previous complaints about radio and internet misuse so insignificant that [they] did not even bother inform Eliserio of a problem, [yet] suddenly took *the severe step of demoting Eliserio for such a complaint.*" *Id.* (emphasis added). The language in the IRS's termination letter here suggests a similar "severe step" in discipline. *Id.* As the letter explains, this was Ms. Hester's first offense, yet removal or a more severe penalty was suggested. (App. 99; R.Doc. 35-4, at 88). Despite her lack of prior offenses and her time with the department, Mr. Grchan still pushed for removal as "the only reasonable sanction" and definitively claimed that there was no opportunity for rehabilitation. (App. 102; R.Doc. 35-4, at 91). All of these reactions appear quite severe for an employee that has no prior offenses and has been revered as "highly qualified." (App. 99, 6-¶13, ; R.Doc. 35-4, 88, 35-2, at 3-¶13). Such an escalation may also "shorten the gap between [the] protected activity and the adverse action[,]" making it

44

more likely that retaliation was the motivating factor for the termination. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006).

At minimum, Ms. Hester can raise a genuine dispute about this misconduct. "[I]f there is a dispute over the conduct or the reasonable inferences to be drawn from the conduct, the jury must resolve the dispute." *Beekman*, 635 F.Supp.2d at 922 (quoting *Brown v. Farmland Foods, Inc.*, 178 F.Supp.2d 961, 981 (N.D. Iowa 2001)). Here, the only evidence the IRS presents of this misconduct is their letter proposing termination. (App. 98; R.Doc. 35-4, at 87). Yet, in their decision to mitigate Ms. Hester's punishment, the MSPB found that the IRS had not met its burden in one of the alleged instances of misconduct. (App. 12-; R.Doc. 35-4, at 110). Further, the MSPB pointed out the IRS's contradictory actions as they stated that they had lost trust in Ms. Hester after this misconduct, yet assigned her a teaching position and a government-owned vehicle to prepare for trial. (App. 132; R.Doc. 35-4, at 121). With competing opinions, credibility becomes "imperative to determining pretext in this case, and, therefore, this claim is. . . appropriately presented to a finder of fact." *Beekman*, 635 F.Supp.2d at 923.

Appellate Case: 24-2039     Page: 45     Date Filed: 08/07/2024 Entry ID: 5422118

Following her appeal on July 26, 2022, her termination was ultimately reduced down to a thirty (30) day suspension, a significant change especially in consideration of the "severe" misconduct the IRS alleges. (App. 111; R.Doc. 35-4, at 100). The MPSB specifically reported that the IRS had not proven by a preponderance of evidence at least one of their claims—the claim that they stated was "the most serious of the misconduct"—nor was such a severe penalty proven reasonable. (App. 113, 132; R.Doc. 35-4, at 102, 121). With such a questionable factual basis, the question arises as to "whether the appellee's articulated reasons for discharge were a pretext for retaliation. . . ." *Grey*, 396 F.3d at 1035. A reasonable factfinder could infer that the alleged misconduct was pretextual, or at the very least should be presented with the evidence to resolve this genuine dispute of material fact. Thus, summary judgment on Counts III and IV was inappropriate.

## Conclusion

Danette Hester was a highly qualified candidate who had dedicated almost two decades of service to the United States. She was a fifty-three year old, African-American female facing a younger, non-African-American male candidate. Unfortunately, the Appellee chose to focus on

46

illegal discriminatory criterion, resulting in Ms. Hester losing out on a position she deserved. When Ms. Hester decided to exercise her right to challenge this discrimination, her employer responded with threats of termination and an undermining of the skills and experience she possessed as an agent. The record demonstrates that Ms. Hester faced discrimination on the basis of her race, sex, and age, along with retaliation for bringing those claims, with many of the material facts raising genuine disputes. This case belongs to a jury; summary judgment was erroneously granted and must be reversed.

BOLES WITOSKY STEWART LAW PLLC

BY:_____/s/ Christopher Stewart_____

Christopher Stewart
BOLES WITOSKY STEWART LAW PLLC
2015 Grand Avenue, Ste. 200
Des Moines, Iowa 50312
(515) 235-0551
(515) 243-3696 (Fax)
chris@bwsiowa.com
ATTORNEY FOR APPELLANT

47

## CERTIFICATE OF SERVICE AND FILING

On August 7, 2024, filer has forwarded ten (10) paper copies of the brief and addendum to the court through Ms. Maureen W. Gornik, Clerk of Court, United States Courthouse, 111 South Tenth Street, Saint Louis, Missouri, 63102, and one (1) copy to the opposing side at its counsel's address of record, via United States Postal Service.

The attached Plaintiff-Appellant's brief and addendum were electronically filed with the CM/ECF system on August 7, 2024.

*/s/ Tamra Fairchild*
Tamra Fairchild

## CERTIFICATE OF COMPLIANCE

This Brief contains 8,100 words, excluding the parts exempted by Fed. R. App. P. 32(f), and therefore is within the words allowed by Fed R. app. P. 32(a)(7)(B)(i).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in proportionally spaced typeface using Microsoft 365 Word in Century Schoolbook font, 14-point.

**BOLES WITOSKY STEWART LAW PLLC**

BY: _____*/s/ Christopher Stewart*_____

Christopher Stewart
BOLES WITOSKY STEWART LAW PLLC
2015 Grand Avenue, Ste. 200
Des Moines, Iowa 50312
(515) 235-0551
(515) 243-3696 (Fax)
chris@bwsiowa.com
**ATTORNEY FOR APPELLANT**

49