# No. 24-2039

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**DANETTE HESTER,**

**APPELLANT,**

**V.**

**JANET L. YELLEN,**
**SECRETARY, DEPARTMENT OF THE TREASURY,**

**APPELLEE.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA**

**BEFORE THE HONORABLE STEPHANIE M. ROSE, U.S. DISTRICT JUDGE**

---

# BRIEF FOR APPELLEE

---

**TERESA A. MOORE**
**UNITED STATES ATTORNEY**

**ELIZABETH D. HATTING**
**ASSISTANT UNITED STATES ATTORNEY**

***Special Attorneys to the Attorney General
Acting Under Authority Conferred by 28
U.S.C. § 515***

**UNITED STATES ATTORNEY'S OFFICE FOR
THE WESTERN DISTRICT OF MISSOURI
CHARLES E. WHITTAKER COURTHOUSE
400 EAST NINTH STREET, SUITE 5510
KANSAS CITY, MO 64106-2149**

**ATTORNEY FOR APPELLEE JANET L. YELLEN,
SECRETARY, DEPARTMENT OF THE TREASURY**

# I. Summary of the case

Appellant herein and plaintiff below, Danette Hester ("Hester"), seeks damages based on allegations that she was subjected to discrete acts of discrimination and retaliation during a period of her employment with the Internal Revenue Service ("IRS") between 2020 and 2022. After full briefing from the parties, the District Court,[i] in an unreported decision,[ii] granted the IRS's summary judgment motion, finding that Hester: (1) failed to establish a *prima facie* case for age discrimination and showed no evidence of pretext, (2) failed present facts from which a reasonable juror could determine that Hester's non-selection for the an instructor position was the result of sex or race discrimination, and (3) failed to establish a *prima facie* case for retaliation based on a proposed removal and presented no evidence of retaliatory pretext. Hester appeals those rulings.

This appeal does not present unusual issues regarding substantive Title VII or ADEA law or procedural summary judgment law. Moreover, this appeal does not involve a matter of first impression in this Circuit, nor does it involve any significant legal matter wherein there is a split of authority among the federal Circuits. As such, the IRS is prepared to waive oral argument from the parties on this appeal.

---

[i] The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

[ii] *Hester v. Yellen*, No. 4:22-00123-SMR-SBJ, 2024 WL 2318622, slip op. (S.D. Ia. May 2, 2024).

i

## II. Table of contents

Page(s)

I.    Summary of the case ...................................................................i

II.   Table of contents ......................................................................ii

III.  Table of authorities ................................................................iv

    A.    Cases ...................................................................................iv

    B.    Statutes and other authorities.......................................vi

IV.   Jurisdictional statement ..........................................................1

V.    Statement of the issues ...........................................................2

VI.   Statement of the case..............................................................3

    A.    Facts ...................................................................................3

        1.    Hester's relevant work history and EEO Complaints..............3

        2.    Hester's application for the RCDI position ...........................4

        3.    Hester's proposed termination .......................................7

    B.    Procedural history and relevant rulings .........................9

VII.  Summary of the argument....................................................11

VIII. Argument ...............................................................................12

    A.    Standard of appellate review .......................................12

    B.    The District Court properly concluded that Hester failed to present evidence to support her race and gender discrimination claims........13

        1.    No evidence supports the claim that Hester was the superior candidate for the RCDI position...................................17

Appellate Case: 24-2039    Page: 3    Date Filed: 11/26/2024 Entry ID: 5460870

## II. Table of contents
## (*continued*)

Page(s)

      2.     The IRS's explanation for its selection of De Feria has not changed ........................................................................... 21

    C.    The District Court properly concluded that Hester failed to state a claim for discrimination or retaliation based on age ....................... 23

    D.    The District Court properly concluded that Hester failed to state a *prima facie* case for retaliation and presented no evidence of pretext ..................................................................................... 26

IX.   Conclusion .................................................................................... 32

X.    Certificate of compliance .............................................................. 34

XI.   Certification of electronic filing of the Brief for Appellee .................... 35

XII.  Certification of mailing of paper copies of the Brief for Appellee ........ 36

Appellate Case: 24-2039    Page: 4    Date Filed: 11/26/2024 Entry ID: 5460870

# III. Table of authorities

## A. Cases

Page(s)

*Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497 (11th Cir. 1991) .....................25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) ............13

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014) ......................................27

*Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782 (8th Cir. 2011) ...........19

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ..................2, 27

*Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989) ..................................25

*Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024) ........................26

*Denn v. CSL Plasma, Inc.*, 816 F.3d 1027 (8th Cir. 2016) ...............................13

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...........................................16

*Du Bois v. Bd. of Reg. of the Univ. of Minn.*, 987 F.3d 1199 (8th Cir. 2021) ......15

*Faulkner v. Douglas Cty. Neb.,* 906 F.3d 728 (8th Cir. 2018) ..........................14

*Fiero v. CSG Sys., Inc.*, 759 F.3d 874 (8th Cir. 2014) .....................................14

*Floyd v. State of Mo. Dept. of Social Serv., Div. of Family Serv.,*
188 F.3d 932 (8th Cir. 1999) ..........................................................2, 20

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012) ........................23

*Greene v. Safeway Stores, Inc.*, 98 F.3d 554 (10th Cir. 1998) .........................25

*Hairston v. Wormuth*, 6 F.4th 834 (8th Cir. 2021) .........................................12

*Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786 (8th Cir. 2019) ..........2, 14, 16

iv

# A. Cases
## (*continued*)

Page(s)

*Higgins v. Gonzales*, 481 F.3d 578 (8th Cir. 2007) .................................... 2, 29

*Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995) .................. 20

*Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010) ............................ 19

*Lewis v. St. Cloud State Univ.*, 467 F.3d 1133 (8th Cir. 2006) ........................ 24

*McAdams v. Reno*, 64 F.3d 1137 (8th Cir. 1995) ........................................... 29

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ......................... 2, 14

*Michael v. Trevena*, 899 F.3d 528 (8th Cir. 2018) .......................................... 13

*Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007) ............. 47

*Moses v. Dassault Falcon Jet-Wilmington Corp.*,
    894 F.3d 911 (8th Cir. 2018) ...................................................2, 16, 25

*Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024) ........................ 26

*Russell v. DeJoy*, 2024 WL 3062238, at *1 (8th Cir. June 20, 2024) ................ 27

*Said v. Mayo Clinic*,
    Case No. 21-3881 Order at p. 9 (8th Cir. Aug. 17, 2022) ...................... 20

*Schiltz v. Burlington N. R.R.*, 115 F.3d 1407 (8th Cir. 1997) ........................ 2, 24

*Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976 (8th Cir. 2022) ........................ 28

*St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502 (1993) .................................. 15, 16

*Starkey v. Amber Enterps, Inc.*, 987 F.3d 758 (8th Cir. 2021) ......................... 14

*Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981) ...................... 16

Appellate Case: 24-2039    Page: 6    Date Filed: 11/26/2024 Entry ID: 5460870

## A.   Cases
(*continued*)

Page(s)

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)  .................. 12, 30

*United States v. Mannis*, 186 F.3d 863 (8th Cir. 1999)............................2, 24, 28

*Younts v. Fremont Cnty., Iowa*, 370 F.3d 748 (8th Cir. 2004)  ...................... 2, 15

## B.   Statutes and other authorities

Page(s)

8TH CIR. R. APP. P. 28A.........................................................................*passim*

29 C.F.R. § 1613.403. ...................................................................................29

28 U.S.C. § 1291 ............................................................................................1

28 U.S.C. § 1294 ............................................................................................1

29 U.S.C. § 623...............................................................................................1

42 U.S.C. § 2000e............................................................................................1

FED. R. APP. P. 25 .........................................................................................36

FED. R. APP. P. 28 .........................................................................................34

FED. R. APP. P. 32 .........................................................................................34

FED. R. CIV. P. 12...........................................................................................13

FED. R. CIV. P. 56...........................................................................................12

Appellate Case: 24-2039     Page: 7     Date Filed: 11/26/2024 Entry ID: 5460870

# IV. Jurisdictional statement

Hester initiated this federal court action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1947, as amended, 29 U.S.C. §§ 623, *et seq.* ("ADEA"), on April 12, 2022, by filing a COMPLAINT, naming as the defendant Janet L. Yellen, in her official capacity as Secretary of the Treasury.[1] App. 161-167; R. Doc. 1.[2] On February 28, 2023, Hester filed an AMENDED COMPLAINT. App. 251-260; R. Doc. 18. On May 2, 2024, the District Court entered an order granting summary judgment to the IRS on all claims. App. 278-287; R. Doc. 48. That same day, a CLERK'S JUDGMENT was entered. App. 288; R. Doc. 49. On May 8, 2024, Hester timely filed her NOTICE OF APPEAL, challenging the District Court's order granting summary judgment to the IRS and vesting this Court with appellate jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294(1). App. 289; R. Doc. 50.

---

[1]     Defendant/Appellee Janet L. Yellen is referred to as "IRS" throughout briefing.

[2]     Citations to documents appearing in both the CM/ECF docket below and the consecutively paginated three volumes of the APPENDIX filed with the Court by Hester are referenced with parallel citations to both sources (*e.g.*, "App. —; R. Doc. —"). 8TH CIR. R. APP. P. 28A(j).

1

# V. Statement of the issues

**A.** **The District Court properly concluded that Hester failed to present evidence to support her race and gender discrimination claims.**

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)

*Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786 (8th Cir. 2019)

*Younts v. Fremont Cnty., Iowa*, 370 F.3d 748 (8th Cir. 2004)

*Floyd v. State of Mo. Dept. of Social Serv., Div. of Family Serv.,* 188 F.3d 932 (8th Cir. 1999)

**B.** **The District Court properly concluded that Hester failed to state a claim for discrimination or retaliation based on age.**

*United States v. Mannis*, 186 F.3d 863 (8th Cir. 1999)

*Schiltz v. Burlington N. R.R.*, 115 F.3d 1407 (8th Cir. 1997)

*Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007)

**C.** **The District Court properly concluded that Hester failed to state a *prima facie* case for retaliation and presented no evidence pretext.**

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)

*Higgins v. Gonzales*, 481 F.3d 578 (8th Cir. 2007)

*Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911 (8th Cir. 2018)

2

## VI. Statement of the case

## A. Facts

## 1. Hester's relevant work history and EEO Complaints

During the relevant time period, Danette Hester worked for the IRS as a Special Agent in Iowa. App. 12; R. Doc. 35-4, at p. 2. In January 2021, Hester applied for a position as a Criminal Investigator and Senior Resident Course Developer/Instructor ("RCDI").[3] App. 15; R. Doc. 35-4, at p. 4. Though she was identified as a well-qualified applicant for the job, in March of 2021, she was ultimately notified that she had not been selected for the one RCDI position filled. App. 17; R. Doc. 35-4, at p. 6. Thereafter, Hester continued working in Iowa as a Special Agent. App. 12; R. Doc. 35-4, at p. 2. On July 9, 2021, Hester filed an EEO Complaint contesting the selection decision and alleging discrimination on the basis of race, sex, and age. App. 36; R. Doc. 35-4, at p. 36, ¶¶ 24-25.

On February 22, 2022, Hester received notice that the IRS was proposing that she be removed from her Special Agent position because an investigation revealed that she had engaged in conduct contradictory to her law enforcement position and misused her Government-owned vehicle. App. 98-103; R. Doc. 35-4, at p. 87-92.

---

[3] Hester refers to this position as "RDCI" throughout her briefing. These acronyms are referencing the same position.

Hester filed a complaint of retaliation with the EEOC related to the proposed termination on June 14, 2022. App. 34; R. Doc. 35-4, at p. 23, ¶ 6.

On June 24, 2022, Hester received a decision letter notifying her that the IRS was terminating her effective June 29, 2022. App. 104-110; R. Doc. 35-4, at pp. 93-99. Hester chose to proceed with contesting the termination decision before the Merit Systems Protection Board ("MSPB"). App. 111-142; R. Doc. 35-4, at pp. 100-131. On April 25, 2023, the MSPB returned a decision concluding that the termination was unduly harsh given the identified misconduct and rescinding the termination in favor of a 30-day suspension without pay. App. 111-142; R. Doc. 35-4, at pp. 100-131. Hester received backpay for time she was out of work (minus the 30-day suspension period). App. 133; R. Doc. 35-4, at p. 122. Neither party has contested the MSPB decision.

## 2.     Hester's application for the RCDI position

In January 2021, Hester applied for a position as a Criminal Investigator and Senior Resident Course Developer/Instructor ("RCDI"). App. 4, 149; R. Doc. 35-2, at p. 1, ¶ 3. RCDIs work as instructors for new IRS agents at the National Training Academy ("NCITA") in Glynco, Georgia. App. 4, 149; R. Doc. 35-2, at p. 1, ¶ 4. The IRS initially posted two openings for RCDIs. App. 4, 149; R. Doc. 35-2, at p. 1, ¶ 5. On March 9, 2021, Hester interviewed for the position with NCITA Director Christopher Altemus, Supervisory Academy Instructor Nicholas Rice, and NCITA

4

Assistant Director Melisa McFadden. App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 7. Altemus was the selecting official. App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 8.

Hester states that on March 11, 2021 (two days after she interviewed for the RCDI position) she was told that though the interview went very well and she was highly qualified for the position, the agency was going in a different direction. App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 13. The next day she had another conversation with one of her interviewers who explained that due to an agency realignment, the second RCDI position was no longer available although interviews had been conducted with the intent to hire two new RCDIs. App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 14.

Hester concedes that "it is my understanding that the second position that was open regarding the posting was not filled." App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 15. This understanding is correct, as reflected by the record of communications among IRS staff involved in the hiring process. On March 10, 2021 (the day after Hester's interview), Altemus emailed Kristina O'Connell, Acting Deputy Director, about the interviews that had been conducted to fill the RCDI position:

> This week a panel comprising of Melissa, Nick Rice (SAI ITT) and myself conducted the interviews for the Senior Resident Course Developer/Instructor (RCDI) of the International Training Team (ITT). We originally had six applicants however two candidates withdrew their names so we interviewed Winston De Feria (TAM FO), Joseph Schmidt (NCITA Basic RCDI), Danette Hester (STL FO) and Peter Nieves (NEW FO) for the two positions at NCITA. All of the candidates interviewed well and each could bring their own unique skills, ability and talent to NCITA. In the end, we all agreed that Winston De Feria is our number 1 option and Danette Hester is our

5

number 2 option for these positions. I have also considered the feedback from the ITT staff as many of the candidates have assisted with International training assignments in the past, as well as the diversity of our ITT.

Therefore, my recommendation is to offer the positions to Winston and Danette. Please let me know if you need any additional information from me.

App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 10. Several hours later, O'Connell responded to

Altemus as follows:

Given our upcoming HQ re-organization, I am going to limit you to one selection at this time. I will leave the one applicant selection to you – and we can revisit the staffing needs of this cadre in the future after the footprint of Strategy has settled.

Let me know if you need to discuss further, but if you're OK with this – you can move forward with making one selection. I've also copied HR Director Wilkins to loop her in on my decision.

App. 5-6, 149; R. Doc. 35-2, at pp. 2-3, ¶ 11.

When asked why Hester was not offered the single RCDI position filled,

Altemus, the selecting official for the RCDI position, explained that:

The interview panel was looking for candidates who had international case experience, teaching experience to include international teaching assignments and [b]ilingual skills as this is a position with the International Instruction Team. … The individual selected for the position had international case experience, experience teaching international classes both in person and virtual as well as is fluent in Spanish.

App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 9. The record reflects that both Hester and De

Feria had a long history of work as a special agent for the IRS (Hester since 2006

6

and De Feria since 2008). App. 4, 7, 149-150; R. Doc. 35-2, at pp. 1, 4, ¶¶ 1, 20. Both applicants expressed during their interviews that they had international case experience. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 21. They also both explained that they had teaching experience. App. 7, 150; R. Doc. 35-2, at p. 4, ¶¶ 22, 23. De Feria stated that for the previous five years he had experience as a senior instructor related to South Central America and Europe. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 22. Hester simply noted that she had experience as an instructor inside and outside the IRS. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 23. De Feria was fluent in Spanish and discussed during his interview that he had translated in conjunction with his work in the past. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 24. The record does not suggest that Hester is fluent in a language other than English, or that she indicated she was bilingual during the interview process. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 25. Altemus explained that De Feria was selected over Hester because De Feria "had international case experience, experience teaching international classes both in person and virtual as well as is fluent in Spanish." App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 9.

### 3. Hester's proposed termination

On February 22, 2022, Hester received notice that the IRS was proposing that she be removed from her Special Agent position because an investigation revealed that she had engaged in conduct contradictory to her law enforcement position and

misused her Government-owned vehicle. App. 8, 150; R. Doc. 35-2, at p. 5, ¶¶ 28-29. Specifically, the proposal stated as follows:

**Reason 1:** You engaged in conduct that is contradictory to your law enforcement position.

> **Specification 1**: On various dates between April 16, 2018 and July 15, 2018, after being told by your incarcerated son he faced federal charges, you helped your incarcerated son contact various individuals. One of the individuals you called for your son was a co-conspirator who was subsequently convicted.

> **Specification 2**: While your son was incarcerated, you spoke about the Southern District of Iowa United States Attorney's Office (USAO) in a derogatory manner. Per the AUSA, you claimed the prosecutor used misinformation to get your son to plead guilty, which is an unsubstantiated allegation.

**Reason 2:** You misused your Government-owned vehicle (GOV).

> **Specification 1:** On or about April 16, 2018, you drove your GOV to your son's probation office. You used your GOV for personal reasons, and you did not have authorization to do so.

App. 8, 150; R. Doc. 35-2, at p. 5, ¶ 29. The February 22, 2022, termination proposal Hester received specifically stated that it was not a final decision and did not effectuate a termination:

> A final decision will not be made in this matter until your reply or replies have been reviewed and considered or, if no reply is received, until after the notice period has passed. Any replies submitted by you will be given full consideration. You will be notified in writing of the final decision. You will be retained in a work status during the advance-notice period.

App. 8, 151; R. Doc. 35-2, at p. 5, ¶ 32. The decision letter effectuating the termination was provided to her on June 24, 2022. App. 9, 151; R. Doc. 35-2, at p.

8

6, ¶ 34. The letter noted that it was the "decision to remove [Hester] from the [IRS] effective June 29, 2022." App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 35.

Hester argues that this termination proposal was issued in retaliation for her June 9, 2021, EEO Complaint contesting her non-selection for the RCDI position. Specifically, she states that the proposal came one month after the agency issued a Final Agency Decision on January 20, 2022, concluding that Hester's non-selection complaint lacked merit.

## B.    Procedural history and relevant rulings

On January 20, 2022, the IRS issued an administrative Final Agency Decision finding that Hester had not established any of her claims of employment discrimination related to the RCDI selection decision.  App. 204-212; R. Doc. 1, at p. 2.  On April 12, 2022, Hester filed a COMPLAINT in the United States District Court for the Southern District of Iowa ("District Court").  App. 1-13; R. Doc. 1.  On December 29, 2022, the agency issued a Final Agency Decision, concluding that Hester's claims based on the proposed termination were not meritorious. App. 34; R. Doc. 35-4, at p. 23, ¶ 7. On February 28, 2023, Hester filed an AMENDED COMPLAINT. App 251-260; R. Doc. 18. The AMENDED COMPLAINT asserted employment discrimination in four counts:

(1)    Race and sex discrimination in violation of Title VII [Count I],

9

(2)     Age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") [Count II],

(3)     Retaliation in violation of Title VII [Count III], and

(4)     Retaliation in violation of the ADEA [Count IV].

App. 251-260; R. Doc. 18.

Following the close of discovery, on October 5, 2023, the IRS filed its MOTION FOR SUMMARY JUDGMENT. App. 1-3; R. Doc. 35. After full briefing from the parties, the District Court issued an ORDER on May 2, 2024, granting the IRS's motion for summary judgment on all counts. App. 278-287; R. Doc. 48. In its order, the District Court found:

(1)     Hester presented no evidence to support her claims based on age discrimination and could not establish a *prima facie* case for age discrimination for Count II;

(2)     Hester failed to satisfy her burden under the *McDonnell Douglas* burden shifting analysis and present evidence that the IRS's reasons for not selecting her for the RCDI position were pretextual, and therefore could not maintain a claim for race or sex discrimination in Count I; and

(3)     Hester failed to establish a *prima facie* case of retaliation based on the proposed termination and presented no evidence of pretext, and therefore could not sustain claims in Counts III and IV.

App. 278-287; R. Doc. 48. On May 2, 2024, a CLERK'S JUDGMENT was entered. App. 288; R. Doc. 49. On May 8, 2024, Hester filed her timely NOTICE OF APPEAL. App. 289; R. Doc. 50.

# VII. Summary of the argument

Hester asks this Court to overturn the District Court's well-reasoned decision granting the IRS's motion for summary judgment based on an incorrect application of the standard for summary judgment and misunderstanding of the plaintiff's burden to survive summary judgment. In her brief Hester asks the Court to reverse the award of summary judgment to the IRS and allow her to proceed to trial because, like De Feria, she was qualified for the RCDI position and claims she could have been judged to be an equivalent or marginally superior candidate to De Feria, while admitting that both she and De Feria had relatively equivalent qualifications in many respects and that De Feria had additional language and leadership qualifications that she did not possess. However, a plaintiff is not permitted to proceed to trial on a discrimination claim so that a jury can re-weigh the qualifications of two candidates and second guess the personnel decisions of the employer. To proceed to trial on a non-selection claim under Title VII an employee must produce affirmative evidence from which a decision maker could conclude that the employer's decision was premised on discrimination. Here, no such evidence exists and the District Court properly granted the IRS's motion for summary judgment.

In addressing her retaliation claim Hester asks the Court to ignore the adverse action standard that applies to retaliation claims and allow her to re-litigate a claim on which she already succeeded in an administrative forum. In so doing she fails to

11

address the looming question of how or why she could possibly proceed to trial to contest a removal proposal where the removal decision itself was already rescinded. She has already received the remedy she apparently seeks. Hester has already fully adjudicated her claims related to the removal in another forum and has identified no legal authority that would allow her a second bite at the apple here.

The District Court thoroughly analyzed Hester's complaints and alleged evidence supporting her claim and correctly determined that none of the claimed events were sufficient to sustain claims for discrimination and/or retaliation. As such, this Court should affirm the District Court's award of summary judgment to the IRS.

## VIII. Argument

### A. Standard of appellate review

This Court reviews a grant of summary judgment *de novo*. *Hairston v. Wormuth*, 6 F.4th 834, 840 (8th Cir. 2021). The Federal Rules of Civil Procedure provide that summary judgment is to be rendered on a claim if a "movant shows that there [is] no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[4] As with motions to dismiss

---

[4] This Court has explicitly noted "[t]here is no 'discrimination case exception' to the application of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*).

12

under Rule 12, the Court must view the facts in the light most favorable to the party opposing summary judgment. *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018). However, such a rule "does not mean [the Court is] bound to credit the [non-moving party's] version of events, come what may." *Id.* Instead, a party opposing summary judgment must "set forth specific facts in the record showing that there is a genuine issue for trial." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016). And while a party may oppose summary judgment by establishing such genuine factual disagreements, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986).

**B.    The District Court properly concluded that Hester failed to present evidence to support her race and gender discrimination claims.**

The District Court properly granted the IRS summary judgment on Hester's Title VII claims for race and gender discrimination for alleged failure to promote Hester to the RCDI position, concluding that while Hester established a *prima facie* case for discrimination "[s]he does not present evidence from which a reasonable juror could find that the Department's reason for not promoting her was pretextual." App. 283-284; R. Doc. 48, at p. 6-7.

As acknowledged by Hester, the *McDonnell Douglas* burden-shifting test must be applied to determine whether Hester may proceed to trial on her claims of

13

discrimination, as well as those for retaliation discussed *infra* at subsection D.[5]

Applying the *McDonnell Douglas* test, Hester bears the initial burden of establishing

a *prima facie* case of discrimination and retaliation. *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802-05 (1973); *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d

786, 794 (8th Cir. 2019). The *prima facie* cases for race discrimination, gender

discrimination, age discrimination, and retaliation are all well-settled. To initially

shift the burden to the IRS under *McDonnell Douglas*, Hester generally must

establish:

> (1)  she is a member of a protected group (*i.e.*, she is a minority),
>
> (2)  she was meeting the legitimate expectations of her job duties,
>
> (3)  she suffered an adverse employment action or actions, and
>
> (4)  a causal connection exists between her membership in the protected group(s) and the adverse action(s).

*Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728, 732 (8th Cir. 2018) (race

discrimination); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (gender

discrimination); *Starkey v. Amber Enterp.s, Inc.*, 987 F.3d 758, 763 (8th Cir. 2021)

---

[5]     Hester does not claim that she has presented any direct evidence of discrimination. *See* App. 281; R. Doc. 48, at p. 4 ("Hester concedes that she does not have any direct evidence of discrimination regarding the Department's failure to hire her for the RCDI position.").

14

(age discrimination); *Du Bois v. Bd. of Reg. of the Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021) (retaliation).

For a failure-to-promote claim this general *prima facie* case requires a slightly modified showing that: 1) the plaintiff is a member of a protected group; (2) she applied for a promotion to an available position for which she was qualified; (3) she was rejected; and (4) similarly situated employees who are not members of the protected class were promoted instead. *Younts v. Fremont Cnty., Iowa*, 370 F.3d 748, 754 (8th Cir. 2004).

If (and only if) Hester establishes such *prima facie* cases, then the burden shifts to the IRS to articulate legitimate reasons for each of its adverse actions. *Id.* Once the IRS articulates such reasons the burden shifts back to Hester to show that the IRS's stated reasons are "merely a pretext for discrimination or retaliation." *Id.* However, "[d]espite this shifting of the burden of production, 'the plaintiff at all times bears the ultimate burden of persuasion.'" *Id.* (quoting, *in part*, *St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

The District Court properly concluded that Hester submitted a *prima facie* case for race and sex discrimination related to selection for the RCDI position. However, Hester's claim still fails because the IRS presented a legitimate, non-discriminatory reason for its selection of De Feria over Hester, and Hester has presented no evidence that this explanation is pretext for discrimination.

15

The record reflects that the only reason Hester was not offered an RCDI position in March 2021 was due to the realignment that meant that only one open position was filled. App. 5-6, 149; R. Doc. 35-2, at pp. 2-3, ¶ 11. Altemus, the deciding official, informed his supervisors on March 10 that he intended to hire both De Feria and Hester. App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 10. However, he was subsequently instructed that he could only fill one position and thus moved forward with hiring De Feria, who the panel of interviewers agreed was the top choice for the position. App. 5-6, 149; R. Doc. 35-2, at pp. 2-3, ¶ 9, 11.

When an employer comes forward with explanations for its conduct the burden shifts back to the employee to present evidence that the explanation provided is mere pretext for discrimination or retaliation. *Heisler*, 931 F.3d at 794; "Mere allegations [of pretext], unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007). Hester must present enough evidence to allow a jury to find by a preponderance of the evidence that the IRS engaged in intentional discrimination. *See St. Mary's Honor Center*, 509 U.S. at 506-11; *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003). Hester fails to meet this burden.

16

**1.    No evidence supports the claim that Hester was the superior candidate for the RCDI position**

Hester attested that she did not agree with the reasons for her non-selection because she was "the most qualified individual for the position, was selected for the position[,] and no reason was given why I was not hired into the position."[6] App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 16. She stated that "a male individual" was placed in the position instead and "based upon information and belief, [he] was not the most qualified individual and received the position." App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 17. She further explained that she "believe[s]" De Feria's qualifications "were similar to [hers] but [she] had more experience, training, knowledge and expertise and was the best qualified." App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 18. She acknowledges that De Feria met the criteria and requirements for the position. App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 19.

Hester sets forth no evidence to suggest that De Feria's selection was the result of impermissible discrimination. During the EEO process, Hester was asked to explain why she believed her race, sex, and age were factors in not being selected for the positions and to "be specific" in her explanation. App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 26. For each question, Hester provided identical responses:

---

[6]    This claim is inconsistent with the record and Hester's own acknowledgment that she was told that she did not get the position due to the realignment and reduction from two open positions to one. App. 6, 150; R. Doc. 35-2, at p. 3, ¶¶ 14-15.

> I believe I was discriminated against based upon my [race/sex/age] and my [race/sex/age] was a determining factor because I was the most qualified for the position and was selected by the committee. I also believe the agency's actions from June of 2018 when I applied for and was not selected for the position where a white male who did not meet the minimum qualifications or requirements was.[7] I further believe my [race/sex/age] was a factor in the agency's decision based upon the fact that I was qualified for the position and only one of the positions was filled.

App. 7, 150; R. Doc. 35-2, at p. 4, ¶ 27. Hester cited no specific reasons for her conclusion that any of her protected characteristics played a role in the selection decision.

Hester and De Feria's resumes and the notes from their interviews reflect that both candidates were well-qualified for the RCDI position (as recognized by Altemus and the other interviewers who recommended hiring both applicants). App. 7, 150; R. Doc. 35-2, at p. 4, ¶¶ 20-25. However, De Feria had some unique skills and qualifications that Hester did not possess. App. 7, 150; R. Doc. 35-2, at p. 4, ¶¶ 20-25. Hester cites no actual evidence to support her claim that she was better qualified for the RCDI position or that the IRS's decision to extend the job offer to De Feria rather than her was the result of her protected characteristics. App. 7, 150; R. Doc. 35-2, at p. 4, ¶¶ 26-27. She simply asserts "based upon information or belief"

---

[7]     No claims related to the alleged 2018 hiring decision were submitted to the District Court.

that she was the superior candidate for the role. App. 6, 150; R. Doc. 35-2, at p. 3, ¶ 17.

In Hester's brief on appeal, the only substantive evidence she points to in support of her claim that she was more qualified than De Feria (as opposed to just equally or well qualified) is that she had two more years of experience than did De Feria working for the IRS. Appellant's Brief, at p. 23. In so arguing she ignores that both applicants had a long history of work for the IRS (Hester since 2006 and De Feria since 2008). App. 4, 7, 149-150; R. Doc. 35-2, at pp. 1, 4, ¶¶ 1, 20. She provides no explanation of why these additional two years of experience would make her better qualified for the RCDI position.[8]

The Eighth Circuit has explicitly rejected the contention that in cases such as this evidence of job qualification is sufficient to create a factual dispute as to pretext. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. 2011) ("[t]he fact that [plaintiff] may have been capable of fulfilling the role [], or that [s]he has specific strengths as a candidate, does not show pretext."). It is well-established that "the employment-discrimination laws have not vested in the federal courts the

---

[8]     In support of this argument Hester also conflates cases discussing the standards for establishing a *prima facie* case of discrimination with those discussing the evidence a plaintiff must present to show pretext. For example, in Appellant's Brief at page 24 Hester relies on a discussion of how to establish a *prima facie* case of discrimination in *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010), even though she is making an argument about the sufficiency of her evidence of pretext. Similar arguments are made on page 27 of Hester's brief.

19

authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Said v. Mayo Clinic*, Case No. 21-3881 Order at p. 9 (8th Cir. Aug. 17, 2022).

In *Floyd v. State of Missouri Department of Social Services, Division of Family Services,* 188 F.3d 932, 936-37 (8th Cir. 1999), the Eighth Circuit discussed a very similar situation in which the plaintiff claimed that the employer's articulated reasons for not promoting her were pretextual because the evidence showed that she was the most qualified candidate based on her prior work experience and educational background. The Court concluded that "her reliance on these facts [wa]s misplaced, however" as the employer "did not argue that [plaintiff] was not qualified for the job, only that she was not the right person for the job in view of her lack of leadership skills needed to be effective in the position." *Id*.  Likewise, in this case, even if Hester's resume did appear to be facially superior to De Feria's (which it does not), the IRS's decision that De Feria was a superior fit for the position based on the reasons articulated would not be legally suspect.

20

## 2. The IRS's explanation for its selection of De Feria has not changed

Hester also claims that she has satisfied her burden to present evidence that the IRS's selection of De Feria for the RCDI position was discriminatory based on alleged "shifting explanations" for the change in the number of vacancies. However, the evidence reflects that the IRS's explanation for its actions has not changed.

The evidence presented by the IRS reflects that the IRS initially posted—and intended to hire for—two RCDI positions. The day after Hester's interview, Altemus emailed Kristina O'Connell, Acting Deputy Director, about his selection decision:

> This week a panel comprising of Melissa, Nick Rice (SAI ITT) and myself conducted the interviews for the Senior Resident Course Developer/Instructor (RCDI) of the International Training Team (ITT) . ….In the end, we all agreed that Winston De Feria is our number 1 option and Danette Hester is our number 2 option for these positions. ….
>
> Therefore, my recommendation is to offer the positions to Winston and Danette. Please let me know if you need any additional information from me.

App. 5, 149; R. Doc. 35-2, at p. 2, ¶ 10. Several hours later, O'Connell responded to Altemus as follows:

> Given our upcoming HQ re-organization, I am going to limit you to one selection at this time. I will leave the one applicant selection to you – and we can revisit the staffing needs of this cadre in the future after the footprint of Strategy has settled.

App. 5-6, 149; R. Doc. 35-2, at pp. 2-3, ¶ 11. Hester has presented no evidence to contest the legitimacy or correctness of either of these emails.

Hester conspicuously ignores the indisputable facts that the IRS has presented contemporaneous documentary evidence showing (1) that De Feria and Hester were initially both selected for the RCDI positions, (2) the initial email from Altemus (sent when he believed he was hiring for two positions) identified De Feria as his top choice and Hester as his second choice, and (3) O'Connell—who made the decision to hire for only one position despite posting two—left it to Altemus to decide which candidate to hire for the position.

Hester acknowledges that Altemus did not discriminate against her (a necessary concession, as the undisputed evidence reflects that Altemus initially selected her for the second RCDI position) and argues that O'Connell was the individual who discriminated against her by reducing the number of RCDI positions available. However, in so doing Hester completely ignores that O'Connell informed Altemus that he could choose either De Feria or Hester to fill the one available position. App. 5-6, 149; R. Doc. 35-2, at pp. 2-3, ¶ 11. She also presents no evidence that O'Connell had any knowledge of Hester's race or age, and no evidence that a second RCDI position was ever filled. No reasonable fact finder could look at this course of events and conclude that De Feria's selection was the result of discrimination against Hester.

Appellate Case: 24-2039    Page: 29    Date Filed: 11/26/2024 Entry ID: 5460870

As Hester has failed to present any evidence that the IRS's explanations of its hiring decision related to the RCDI position amount to pretext for discrimination, the District Court's award of summary judgment to the IRS on Hester's discrimination claims should be affirmed.

## C. The District Court properly concluded that Hester failed to state a claim for discrimination or retaliation based on age.

The District Court rejected Hester's claims based on alleged age discrimination, properly concluding that Hester failed to establish a *prima facie* case for age discrimination because she failed to show that someone "substantially younger" than herself received the promotion. As noted by the District Court, there was only a four-year age difference between Hester and De Feria. App. 282; R. Doc. 48, at p. 5. The District Court also discussed that Hester presented no evidence of pretext for the legitimate, nondiscriminatory reasons offered by the IRS for its decision not to hire Hester. App. 282; R. Doc. 48, at p. 5.

In opposing summary judgment Hester made no argument regarding the adaptation test she now asks the Court to apply to the "substantially younger" element of her ADEA claims. *See* R. Doc. 46-1, at pp. 15-16. Rather, she identified the elements of an age discrimination claim as being set forth in *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012), which includes as the fourth element that the plaintiff "was replaced by someone substantially younger." R. Doc.

23

46-1, at p. 15. As evidence of this fourth element, Hester submitted that "the individual hired instead of [herself] was four (4) years younger than [her]….The prima facie case of age discrimination is therefore established…" R. Doc. 46-1, at p. 16. The Court should not consider this newly raised argument on appeal. *United States v. Mannis*, 186 F.3d 863 (8th Cir. 1999) ("We do not entertain new arguments on appeal from the grant of summary judgment.").

Even if this argument had been properly raised before the District Court, it would fail. Hester relies exclusively on aging law from other circuits in support of her claim that a "flexible evidentiary standard" should be applied to the "substantially younger" element of her claims. The Eighth Circuit has never applied such a modified test. Rather, Eighth Circuit precedent reflects that an age difference of a few years is insufficient to give rise to a *prima facie* case of age discrimination with respect to the "substantially younger" element. *See, e.g., Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136-37 (8th Cir. 2006) (a replacement two-and-a-half years younger is not "substantially younger"); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997) (an age disparity of five years or less is not "substantially younger").

Hester also provides no substantive explanation for why this case is extraordinary or justifies deviating from the standard elements of an age discrimination claim. Hester presents no evidence of age discrimination at all beyond

24

the four-year age difference between herself and De Feria. By contrast, the plaintiffs in the cases relied on by Hester provided specific evidence beyond a basic age comparison to support their claims of discrimination. For example, in *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 559-60 (10th Cir. 1998) and *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991), the plaintiffs presented evidence that the defendant chose the plaintiffs' replacements to gain tactical advantage in future litigation. *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1045 (8th Cir. 2007). In *Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989), the Eleventh Circuit held that it was not error for the district court to overrule a motion for directed verdict based on the *prima facie* case submitted to the jury on plaintiff's age discrimination claim, but concluded that it was error for the district court to overrule the motion for directed verdict on the claim at the close of all the evidence. The age comparison alone was not sufficient evidence to support the jury verdict in favor of plaintiff on the age discrimination claim. *Id.* In awarding summary judgment to the IRS on Hester's claims, the District Court found not only that Hester failed to establish a *prima facie* case for age discrimination, but also that "the legitimate, nondiscriminatory reason offered by the Department for the decision not to hire Hester is not pretextual." App. 282; R. Doc. 48, at p. 5. As discussed *supra* at subsection B, this conclusion is amply borne out by the evidence presented by the parties on the summary judgment motion.

The District Court's award of summary judgment to the IRS on Hester's age discrimination claims was proper in light of Hester's failure to present any legal or factual basis for her claims, and the decision below should be affirmed.

## D. The District Court properly concluded that Hester failed to state a *prima facie* case for retaliation and presented no evidence pretext.

The District Court properly concluded that the IRS was entitled to summary judgment on Hester's claims of retaliation premised on the proposed removal Hester received on February 22, 2022. App. 285-287; R. Doc. 48, at pp. 8-10. As recognized by the District Court, the proposed termination does not constitute a legally actionable adverse action and even if it did Hester presented no evidence that the proposed termination was causally connected to her discrimination complaint.

For a retaliation claim, to satisfy the third element of the *McDonnell Douglas* test discussed *supra*, Hester must identify an "adverse employment action." In April 2024, the standard for adverse actions in Title VII discrimination claims was changed in *Muldrow v. City of St. Louis*. Under this new standard for discrimination claims, adverse employment actions need not be "significant," "material," or "serious.'" *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 975 n.2 (2024)).

26

Critically, the Eighth Circuit has not concluded that the *Muldrow*[9] standard applies to retaliation claims, but in *Russell v. DeJoy*, 2024 WL 3062238, at *1 (8th Cir. June 20, 2024), an unpublished decision, casts doubt on the applicability of *Muldrow* to the adverse action standard retaliation claims. Consistent with this analysis the IRS maintains that the adverse action standard set out in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), is the proper adverse action standard to apply in this case.

Under *Burlington Northern*, the plaintiff must set forth evidence that "the employer took 'materially adverse' actions that could dissuade a reasonable worker from making a charge of discrimination in support of her retaliation claim." *Russell*, 2024 WL 3062238, at *1. The anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N.*, 548 U.S. at 67. As a result, the Eighth Circuit has determined that actions such as commencing performance evaluations, sending critical letters that threatened discipline, and falsely reporting poor performance did not establish a prima facie case of retaliation absent materially adverse consequences to the employee." *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014).

---

[9] Hester simply assumes in her brief on appeal that *Muldrow* applies to retaliation claims, but present no analysis of whether the case is actually applicable in light of *Muldrow*'s specific holding rendered in the discrimination context.

27

Regardless of which standard is applied, Hester identifies no adverse action. The only IRS action properly preserved related to Hester's retaliation claim is the proposed termination letter she received in February 2022.[10] App. 8, 150; R. Doc. 35-2, at p. 5, ¶ 28. Hester argues that this proposal constitutes an adverse action because it required her to "prepare a response and defend her actions pending termination," and shifted the perception of her in the office. Appellant's Brief, at p. 40. However, neither of these arguments were raised by Hester before the District Court.[11] *See* R. Doc. 46-1, at pp. 21-24. Instead, she previously argued that prior to the actual termination notice she was subjected to an adverse action by being forced to "merely await[] the inevitable." R. Doc. 46-1, at pp. 23-24. Hester's new argument should not be considered. *United States v. Mannis*, 186 F.3d 863 (8th Cir. 1999).

---

[10]    Hester suggests that she has presented evidence of retaliation based on the temporal proximity between the January 2022 issuance of the Final Agency Decision finding against Hester on her non-selection claims and the February 2022 proposal. She fails to present any authority suggesting that the temporal proximity between an administrative decision denying a plaintiff's claim and an employer's subsequent action is sufficient to prove a link between the protected action and subsequent event. Even if such proximity did suggest a link, the Eighth Circuit has rejected the claim that temporal proximity alone is sufficient to create a genuine issue of material fact regarding whether an action was retaliatory. *Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976, 984 (8th Cir. 2022).

[11]    As such, Hester presented no evidence that she actually responded to the proposed termination or that anyone's perception of her changed as a result of the termination proposal. The absence of evidence to support these contentions dooms Hester's claims without further analysis.

28

Critically, Hester pursued a separate action with respect to the actual termination decision before the Merit Systems Protection Board ("MSPB"). Federal employees cannot simultaneously pursue separate claims regarding the same employment action before both the MSPB and EEOC. *McAdams v. Reno*, 64 F.3d 1137, 1141 n.4 (8th Cir. 1995) ("If an employee files in both places, the regulations provide rules for determining which forum has been chosen: '[W]hichever is filed first (the EEO complaint or the MSPB appeal) shall be considered an election to proceed in that forum.' 29 C.F.R. § 1613.403.").

Before the MSPB Hester prevailed on her claim that the termination should be rescinded—not because the Board determined that the IRS terminated Hester due to an impermissible retaliatory motive, but because the Board decided that removal was too severe a response to Hester's misconduct. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 39. As such, Hester's employment with the IRS was reinstated and the IRS was ordered to pay Hester back pay for her time away from work, other than a period of 30 days during which the MSPB upheld a suspension of her employment. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 38. As Hester's termination was revoked, and she has been made whole with respect to her temporary separation, there is no basis for any claim related to the termination or termination proposal.

The Eighth Circuit has long held that proposal to terminate an employee is not itself an adverse employment action. *Higgins v. Gonzales*, 481 F.3d 578, 587-88 (8th

29

Cir. 2007), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Rather, a termination is a discrete act which occurs on the day it actually happens. *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 920 (8th Cir. 2018). The termination proposal Hester received on February 22, 2022, specifically stated that it was not a final decision and did not effectuate a termination:

> A final decision will not be made in this matter until your reply or replies have been reviewed and considered or, if no reply is received, until after the notice period has passed. Any replies submitted by you will be given full consideration. You will be notified in writing of the final decision. You will be retained in a work status during the advance-notice period.

App. 8, 151; R. Doc. 35-2, at p. 5, ¶ 32. The decision letter effectuating the termination was provided to her on June 24, 2022. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 34. The letter noted that it was the "decision to remove [Hester] from the Internal Revenue Service effective June 29, 2022." App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 35. This "'discrete act'…constitutes an actionable adverse action," which required its own administrative claim to contest it. *Moses*, 894 F.3d at 920-21.

Accordingly, Hester appealed the termination decision to the MSBP. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 36. In conjunction with assessing the MSPB claim, the agency specifically inquired as to whether Hester had filed an EEO complaint concerning her removal and noted that she had not. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 37. On April 25, 2023 the MSPB issued a decision related to the removal action

30

and mitigated the removal to a 30-day suspension. App. 9, 151; R. Doc. 35-2, at p. 6, ¶ 38. Hester has not challenged this 30-day suspension. *See generally,* Amended Complaint.

Even if the removal proposal did constitute an adverse action—which it does not—Hester presents no evidence suggesting that the removal proposal had anything to do with her protected activity related to the RCDI selection. As set forth in the proposed removal, removal was proposed for the following reasons:

**Reason 1:** You engaged in conduct that is contradictory to your law enforcement position.

> **Specification 1**: On various dates between April 16, 2018 and July 15, 2018, after being told by your incarcerated son he faced federal charges, you helped your incarcerated son contact various individuals. One of the individuals you called for your son was a co-conspirator who was subsequently convicted.

> **Specification 2**: While your son was incarcerated, you spoke about the Southern District of Iowa United States Attorney's Office (USAO) in a derogatory manner. Per the AUSA, you claimed the prosecutor used misinformation to get your son to plead guilty, which is an unsubstantiated allegation.

**Reason 2:** You misused your Government-owned vehicle (GOV).

> **Specification 1:** On or about April 16, 2018, you drove your GOV to your son's probation office. You used your GOV for personal reasons, and you did not have authorization to do so.

App. 8, 150; R. Doc. 35-2, at p. 5, ¶ 29. There is no evidence in the record suggesting that these stated reasons were pretext for retaliation or other malintent. This is particularly evident as the investigation into Hester's misconduct related to the identified activities began in 2019—years before Hester applied for the RCDI position and years before she filed her EEO complaint related to her non-selection.

31

App. 4, 149; R. Doc. 35-2, at p. 1, ¶ 2. The six-page proposed removal discusses the severity of this misconduct and the reasons the agency found it appropriate to propose removal in light of Hester's conduct. App. 8, 151; R. Doc. 35-2, at p. 5, ¶ 30. Nothing in the proposal references anything related to the promotion Hester applied for, and the document thoroughly reflects that the stated reasons for the proposal reflect actual problems with Hester's conduct that the agency concluded raised significant issues for her continued employment. App. 8, 151; R. Doc. 35-2, at p. 5, ¶ 31.

Accordingly, the District Court properly concluded that the IRS was entitled to summary judgment on Hester's Counts III and IV which do not relate to any adverse action or retaliatory conduct by the IRS. This decision should be affirmed.

## IX. Conclusion

Appellee Janet L. Yellen, in her official capacity as Secretary of the Treasury, respectfully requests that the Court affirm the final judgment of the District Court below that was entered following and on the bases of its prior entry of an order granting the IRS's motion for summary judgment.

Respectfully submitted,

Teresa A. Moore
United States Attorney

By   */s/ Elizabeth D. Hatting*

Elizabeth D. Hatting
Assistant United States Attorney
Missouri Bar No. 67337

Special Attorneys to the Attorney General
Acting Under Authority Conferred by 28
U.S.C. § 515

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-3130
FAX: (816) 426-3165
elizabeth.hatting@usdoj.gov

ATTORNEYS FOR APPELLEE JANET L.
YELLEN, SECRETARY OF THE
TREASURY

33

# X. Certificate of compliance

Pursuant to 8TH CIR. R. APP. P. 28A(h)(1)-(3), and FED. R. APP. P. 28(a)(10), 32(a)(5)(a), 32(a)(7)(B)(i), 32(g)(1), the undersigned Assistant United States Attorney hereby certifies that the forgoing BRIEF FOR APPELLEE complies with the Court's technical requirements for electronic versions of appellate briefs, including complying with the applicable type-volume limitation in that:

The BRIEF FOR APPELLEE was prepared utilizing the Word application on Microsoft Office 365 software,

The electronic version of the BRIEF FOR APPELLEE is in a single document file, has been scanned for viruses and is virus-free, is in Portable Document Format ("*.pdf*") and has been converted to *.pdf* document from the original Word file using Adobe Acrobat Pro DC software,

The BRIEF FOR APPELLEE contains 8,580 words[12] as verified with the Word application on Microsoft Office 365 software, and

The BRIEF FOR APPELLEE was prepared utilizing 14-point or larger proportionally spaced "Times New Roman" typeface.

*/s/ Elizabeth D. Hatting*
Elizabeth D. Hatting
Assistant United States Attorney

---

[12] The word count excludes the table of contents, table of citations, statement with respect to oral argument, and certifications of counsel. FED. R. APP. P. 32(f).

34

## XI. Certification of electronic filing of the BRIEF FOR APPELLEE

Pursuant to 8TH CIR. R. APP. P. 28A(a), the undersigned Assistant United States Attorney hereby certifies an electronic version of the foregoing BRIEF FOR APPELLEE was filed with Clerk of the Court using the Court's CM/ECF system on this 26th day of November, 2024.

*/s/ Elizabeth D. Hatting*
Elizabeth D. Hatting
Assistant United States Attorney

Appellate Case: 24-2039    Page: 42    Date Filed: 11/26/2024 Entry ID: 5460870

## XII. Certification of mailing of paper copies of the BRIEF FOR APPELLEE

The undersigned Assistant United States Attorney hereby certifies that ten (10) true and correct paper copies the foregoing BRIEF FOR APPELLEE were sent to the office of the Clerk of the Court in compliance with the provisions of FED. R. APP. P. 25(a)(2)(A)(i) and 8TH CIR. R. APP. P. 28A(d), and that one true and correct paper copy of the foregoing BRIEF FOR APPELLEE was placed in the United States first class mail, postage prepaid, addressed to:

Christopher Stewart
Charles Gribble
GRIBBLE, BOLES, STEWART & WITOSKY
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312

ATTORNEYS FOR APPELLANT
DANETTE HESTER

on this 26th day of November, 2024. [13]

*/s/ Elizabeth D. Hatting*
Elizabeth D. Hatting
Assistant United States Attorney

---

[13] The mailings of the paper copies of the BRIEF FOR APPELLEE to the appellant and the Clerk of the Court are being completed within five days of the receipt of notice from the Clerk of the Court that the electronic version of the BRIEF FOR APPELLEE has been reviewed and filed. 8TH CIR. R. APP. P. 28A(d).

Appellate Case: 24-2039   Page: 43   Date Filed: 11/26/2024 Entry ID: 5460870