# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## No. 24-2039

DANETTE HESTER,
Appellant,

vs.

UNITED STATES DEPARTMENT OF THE TREASURY, SECRETARY JANET L. YELLEN,
Appellee.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF IOWA

## APPELLANT'S REPLY BRIEF

Christopher Stewart
BOLES WITOSKY STEWART LAW PLLC
2015 Grand Avenue, Ste. 200
Des Moines, Iowa 50312
(515) 235-0551
(515) 243-3696 (Fax)
chris@bwsiowa.com
**ATTORNEY FOR APPELLANT**

1

TABLE OF CONTENTS

Table of Contents ..................................................................................2

Table of Authorities.............................................................................3

Reply Arguments ..................................................................................5

   I.   Ms. Hester Sufficiently Established Underlying Pretext .....5

   II.   The Modified Application of the Fourth *McDonnell Douglas* Element Appropriately Falls Within its Flexible Purpose ..................................................................................8

   III.   A Prima Facie Case Was Sufficiently Established............11

      A.   THE TERMINATION PROPOSAL SATISFIES *BURLINGTON*.................11

      B.   TEMPORAL PROXIMITY, IN CONJUNCTION WITH OTHER EVIDENCE, SHOWS A CAUSAL CONNECTION ........................................................ 12

      C.   THE MSPB'S DECISION DOES NOT PRECLUDE FURTHER ACTION...13

Conclusion............................................................................................14

Certificate of Service and Filing ....................................................15

Certificate of Compliance ................................................................16

# TABLE OF AUTHORITIES

**Cases**

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014) ............................ 12

*Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893 (N.D. Iowa 2009) ................................................................................................ 13

*Burlington N.& Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ............. 11

*Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989) ...................... 9, 10

*Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071 (8th Cir. 2005) ........................................................................................ 12, 13

*Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984) .......... 14

*Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932 (8th Cir. 1999) ................................................................................................ 6

*Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538 (8th Cir. 1991) ........... 6

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978) ............................... 8

*Grant v. City of Blytheville, Arkansas*, 841 F.3d 767 (8th Cir. 2016) ...... 9

*Kincaid v. City of Omaha,* 378 F.3d 799 (8th Cir. 2004) .......................... 6

*Kobrin v. Univ. of Minnesota*, 34 F.3d 698 (8th Cir. 1994) ...................... 7

*Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010) ...................... 6

*McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973) ............ 5, 8, 9, 10

*Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007)..10

*Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024) ...............11

*Putman v. United Health System*, 348 F.3d 732 (8th Cir. 2003)..............8

*Pye v. Nu Aire, Inc.*, 641 F.3d 1011 (8th Cir. 2011) .................................9

*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005) .......................9

*Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899 (8th Cir. 2015) .6

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)..................................8

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)...........5, 13

*Wallace v. DTG Operations, Inc.*, 442 F.3d 1112 (8th Cir. 2006)...........13

# REPLY ARGUMENTS

## I. Ms. Hester Sufficiently Established Underlying Pretext

Both parties agree that Ms. Hester's race and gender discrimination claims turn on the last step in the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802–04 (1973). Since the District Court concluded that Ms. Hester established a *prima facie* case for discrimination and the IRS provided a nondiscriminatory reason for their actions, Ms. Hester is required to demonstrate that the reason offered by the IRS was pretextual. (App. 283–84; R.Doc. 48, at 6–7). Ms. Hester sufficiently establishes pretext on two bases.

There are many ways a plaintiff may raise a "material question of fact regarding pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011). The plaintiff may demonstrate that the employer's explanation is "unworthy of credence because it has no basis in fact," or that a "prohibited reason more likely motivated the employer." *Id*. Evidence of pretext also includes treating "similarly-situated employees in a disparate manner," hiring a less qualified candidate for a position, or shifting explanations for employment actions. *Lake v. Yellow Transp.,*

5

*Inc.*, 596 F.3d 871, 874 (8th Cir. 2010); *Kincaid v. City of Omaha,* 378 F.3d 799, 805 (8th Cir. 2004). That evidence was sufficiently present here.

Specific evidence shows Ms. Hester had an additional two years of experience in comparison to the other candidate selected and more time spent with the IRS. (App. 66; R.Doc. 35-4, at 55, 69). This career included international experience and two decades of work history, noted priorities of the interviewers. (App. 206; R.Doc. 46-4, at 61). No part of this work history reflects misconduct or a lack of leadership that would disqualify her from this position. *See Floyd v. State of Missouri Dept. of Social Services*, 188 F.3d 932, 937 (8th Cir. 1999); *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir. 1991). These are not claims of "some metaphysical doubt as to the material facts," but instead specific points in the record reflecting a genuine issue as to the hiring of Mr. De Feria over Ms. Hester. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).

Additionally, the change in number of vacancies also represents a "[s]ubstantial change[] over time in the employer's proffered reason for its employment decisions support[ing] a finding of pretext." *Kobrin v.*

6

*Univ. of Minnesota*, 34 F.3d 698, 703 (8th Cir. 1994). As shown by the emails in the record, while the original job posting listed two vacancies and the panel proceeded with the intent to hire two candidates, it was not until Deputy Director Kristina O'Connell received the email which named Ms. Hester as a selected candidate that the realignment reason was offered. (App. 43, 6-¶14, 206; R.Doc. 35-4, at 32, 35-2, at 3-¶14, 46-4, at 61). This goes beyond suspicious timing; according to the emails from Deputy O'Connell, this decision was announced around the same time the job position was posted, yet the candidate search was allowed to proceed for three months without any indication of the reduced vacancies. (App. 206; R.Doc. 46-4, at 61). This timing could reasonably lead a jury to reject the IRS's nondiscriminatory reason as pretext and infer discriminatory motivations.

Further, earlier interviews reveal that the authority to hire a second candidate was "at [Deputy O'Connell's] level," who indicated that she, at minimum, was aware of the sex and race of the candidate selected over Ms. Hester and had the perception that Ms. Hester was female "based on her name." (App. 190, 206; R.Doc. 46-4, at 31, 47). These facts could lead a reasonable fact finder to draw an inference of an underlying,

7

discriminatory purpose. Thus, Ms. Hester has sufficiently shown pretext that would overcome summary judgment and create a genuine dispute of material fact for the jury.

## II. The Modified Application of the Fourth *McDonnell Douglas* Element Appropriately Falls Within its Flexible Purpose

The need for a modified test for the "substantially younger" element is not a new argument in this case. Rather, the fluid and flexible nature of the test captures a degree of variation to the fourth element. As courts have recognized since *McDonnell Douglas*, "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)); *see also Putman v. United Health System*, 348 F.3d 732, 735 (8th Cir. 2003) ("The concept is flexible, and the burden of establishing a prima facie case is not onerous" (citation omitted)); .

The flexibility established by the Supreme Court in the *McDonnell Douglas* test also indicates that a modified application of the fourth element is not automatically precluded in this case. *See, e.g., Grant v.*

8

*City of Blytheville, Arkansas*, 841 F.3d 767, 774 (8th Cir. 2016) ("[T]he required showing for a *prima facie* case is a 'flexible evidentiary standard….'" (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011))). The analytical application of the "substantially younger" element exemplified by the Tenth and Eleventh Circuits does not stray from the original threshold established in the overarching *McDonnell Douglas* test. A less rigorous standard has been consistently applied at the *prima facie* stage to prevent "conflat[ing] the prima facie case with the ultimate issue of discrimination," which would "effectively eliminat[e] the burden-shifting framework the Supreme Court has directed us to use." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (citation omitted). Adjusting the fourth element to reflect the "subtle and often relative" distinctions in age prevents the type of "overly strict formulation" that would eliminate the framework laid out by the Supreme Court. *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989).

The factual framework in Ms. Hester's case also reflects similar, extraordinary circumstances where a deviation from the traditional *McDonnell Douglas* framework was justified. As the *Carter v. City of Miami* court emphasized, the reality of the workplace is that an

9

individual within the protected class will rarely be replaced with someone in their twenties. 870 F.2d at 583. The court recognized this because the petitioner's replacement when she was fired was 46 years old–only four years younger than Carter and technically within the same, protected class. *Id.* 579–80. The same reality exists here; while there is only a four-year age difference between Ms. Hester and Mr. De Feria, RDCI position called for a "*senior level* instructional specialist" with expert qualifications and teaching experience—qualities unlikely in someone in their twenties. (App. 44; R.Doc. 35-4, at 33). This Court has not expressly barred plaintiffs from establishing their prima facie case of age discrimination when their replacement is not substantially younger. *See Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1045 (8th Cir. 2007). Given the similarity between Ms. Hester's case and the modified approach to the fourth *McDonnell Douglas* element and the overarching goals of the prima facie stage, Ms. Hester has sufficiently established her prima facia case of age discrimination.

## III. A Prima Facie Case Was Sufficiently Established

### A. THE TERMINATION PROPOSAL SATISFIES *BURLINGTON*

Contrary to the Appellee's argument, Ms. Hester's analysis did apply the standard set forth in *Burlington N.& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the same standard cited in both *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 976 (2024) and the District Court in this case. (App. 286; R.Doc. 48, at 9; Add. 9). The termination proposal sufficiently represents a materially adverse action that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67 (citations omitted).

Most notably, the language used in her termination proposal and the severe consequences implicated—especially the inevitability of her termination—would deter any reasonable worker from bringing further claims of discrimination, especially Director Gabriel Grchan's "grave concerns," belief in a harsher penalty despite no prior offenses, and an emphasis on no chance for rehabilitation. (App. 98–99, 101; R.Doc. 35-4, at 87–88, 90). This choice of words, especially in what is supposed to be only a proposal for termination, is particularly dissuasive given the later

11

findings that Ms. Hester's termination was an unreasonable punishment in light of the misconduct alleged. (App. 113, 132; R.Doc. 35-4, at 102, 121). Given the inevitability of her termination, Ms. Hester has established an injury or harm beyond mere threats of discipline or reports of poor performance. *See AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014). This, the second element of Ms. Hester's prima facia case of retaliation is sufficiently established.

### B. TEMPORAL PROXIMITY, IN CONJUNCTION WITH OTHER EVIDENCE, SHOWS A CAUSAL CONNECTION

Ms. Hester received her proposal for termination within seven (7) months of filing her discrimination complaint. (App. 63, 98, R.Doc. 35-4, at 52, 87). Causal connections have been found with similar timeframes. *See, e.g.*, *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1079 (8th Cir. 2005). Paired with the other evidence surrounding this termination proposal, there is a sufficient showing of the third element of Ms. Hester's retaliation claim. "Viewed within the context of the overall record, temporal proximity may directly support an inference of retaliation, and it may also affect the reasonableness of inferences drawn from other evidence." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112,

1122 (8th Cir. 2006), *abrogated on other grounds by Torgerson*, 643 F.3d 1031. Not only did this proposal come within months after her discrimination claim, when resources were likely expended to investigate the claim, but the proposal also stemmed from misconduct that raises a genuine factual dispute; as the MSPB later found, the IRS had failed to meet its burden of proof on at least one instance of misconduct and further contradicted themselves when they placed Ms. Hester in a teaching position despite losing trust in her. (App. 12, 132; R.Doc. 35-4, at 110, 121). The severity of Ms. Hester's punishment for this alleged misconduct, especially in light of her time with the department and lack of prior offenses, when paired with the seven-month timeframe, also raises the inference of a causal connection. *See Eliserio*, 398 F.3d at 1079; (App. 102; R.Doc. 35-4, at 91). These disputes and competing opinions belong to a finder of fact, whose job it is to draw and resolve inferences of retaliation. *See Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893, 922 (N.D. Iowa 2009).

### C. THE MSPB'S DECISION DOES NOT PRECLUDE FURTHER ACTION

Lastly, the Appellee's incorrectly claim that Ms. Hester has been "made whole" by the MSPB's decision to reduce her termination to a 30-

13

day suspension including backpay. Ms. Hester's original petition requests more than just lost wages for the discrimination and retaliation she faced; the MSPB's decision does not address the emotional damages, punitive damages, or attorney fees Ms. Hester is entitled to. (App. 41; R.Doc. 35-4, at 30). Additionally, limiting Ms. Hester to the remedies provided only by the MSPB would contradict previous confirmation that federal courts are empowered to "make whole" victims under Title VII "as the particular circumstances of a case may require to effect restitution." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 621 n. 15 (1984).

## CONCLUSION

Ms. Hester asserted her arguments properly and sufficiently established not only prima facie cases for race, age, sex discrimination and retaliation, but also demonstrated that the IRS's reasons for not hiring her were pretextual. The District Court's decision to grant summary judgement should be reversed.

14

## CERTIFICATE OF SERVICE AND FILING

On December 31, 2024, the filer has forwarded ten (10) paper copies of this Reply Brief to the court through Ms. Maureen W. Gornik, Clerk of Court, United States Courthouse, 111 South Tenth Street, Saint Louis, Missouri, 63102, and one (1) copy to the opposing side at its counsel's address of record, via United States Postal Service.

The attached Plaintiff-Appellant's Reply Brief was electronically filed with the CM/ECF system on December 31, 2024.

*/s/ Tamra Fairchild*
Tamra Fairchild

## CERTIFICATE OF COMPLIANCE

This Reply Brief contains 1,946 words excluding the parts exempted by Fed. R. App. P. 32(f), and therefore is within the words allowed by Fed. R. App. P. 32(a)(7)(B)(ii).

This Reply Brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)5) and 32(a)(6) because this Brief has been prepared in proportionally spaced typeface using Microsoft 365 Word in Century Schoolbook font, 14-point.

**BOLES WITOSKY STEWART LAW PLLC**

BY: */s/ Christopher Stewart*
Christopher Stewart
BOLES WITOSKY STEWART LAW PLLC
2015 Grand Avenue, Ste. 200
Des Moines, Iowa 50312
(515) 235-0551
(515) 243-3696 (Fax)
chris@bwsiowa.com
**ATTORNEY FOR APPELLANT**